[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-14035
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 4, 2010
JOHN LEY
ACTING CLERK

D. C. Docket No. 09-20304-CR-JEM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NATALIE OPAL HOLMES,
a.k.a. Julie Ann Overton,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 4, 2010)

Before CARNES, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

Natalie Opal Holmes appeals her convictions of aggravated identity theft for

knowingly transferring, possessing, and using a means of identity of another when she applied for a Florida driver's license in October 2004, 18 U.S.C. § 1028A(a)(1), and aggravated identity theft for knowingly transferring, possessing, and using a means of identification of another when she applied for a Florida identification card in December 2007, id. Holmes argues that no reasonable jury could have found beyond a reasonable doubt that she knew that the means of identification at issue belonged to another person. See Flores-Figueroa v. United States, 556 U.S. - - , 129 S. Ct. 1886 (2009). We affirm.

## I. BACKGROUND

In April 2009, a federal grand jury returned a seven-count indictment against Holmes, who is not a U.S. citizen. The indictment alleged that Holmes (1) wilfully and knowingly made a false statement when she applied for a passport in January 2004, 18 U.S.C. § 1542; (2) misrepresented her social security number to obtain a Florida driver's license in October 2004, 42 U.S.C. § 408(a)(7)(B); (3) falsely represented herself as a U.S. citizen to obtain a Florida driver's license, 18 U.S.C. § 911; (4) knowingly transferred, possessed, and used a means of identity of another when she applied for a Florida driver's license in October 2004, id. § 1028A(a)(1); (5) misrepresented her social security number to obtain a Florida identification card in December 2007, 42 U.S.C. § 408(a)(7)(B); (6) falsely

2

represented herself to be a U.S. citizen to obtain a Florida identification card, 18 U.S.C. § 911; and (7) knowingly transferred, possessed, and used a means of identification of another when she applied for a Florida identification card in December 2007, id. § 1028A(a)(1). In her opening statement at trial, Holmes admitted her guilt of all charges except aggravated identity theft.

At trial, the uncontested evidence proved that Holmes repeatedly used the identity of Julie Ann Overton, who testified at trial. Cf. United States v. Gomez, 580 F.3d 1229, 1234 (11th Cir. 2009) ("Agent Dulin acknowledged on cross-examination that he had been unable to locate Delgado in Puerto Rico, which could have led the jury to question whether Delgado was an actual person."). Holmes admitted that she applied for Florida driver's licenses and identification cards using Overton's name and social security number and that Florida issued licenses or cards to her in 2002, 2003, 2004, and 2007. Holmes also admitted that in January 2004 she applied for a passport using a Florida driver's license and Overton's social security number and birth certificate, which included Overton's date and city of birth as well as her parents' names and cities of birth. The government also proved that the U.S. Department of State approved Holmes's application for a passport dated January 2004 and returned her copy of Overton's birth certificate. The government offered evidence that Holmes also used Overton's personal

information to secure a line of credit that she used to purchase a 2007 Chrysler, which she registered in Florida in Overton's name.

The government presented evidence of the rigorous verification processes to which Holmes repeatedly subjected Overton's personal information. A representative of the Florida Department of Highway Safety and Motor Vehicles testified that Florida requires an applicant for a driver's license or identification card to apply in person at a state office. The applicant must submit both proof of legal residence or citizenship and a secondary identification card, such as a social security card. A state examiner "observes these documents and makes sure they are true and authentic" and enters the applicant's name and social security number into an electronic database that is tied to the social security database to verify that the name and number correspond. If the data correspond, the examiner enters additional personal information from the applicant; if they do not, the examiner cannot issue a license or identification card. A representative of the U.S. Department of State, Diplomatic Security Service, also testified that the State Department employs verification procedures for the issuance of passports. An applicant for a passport must apply in person with proof of citizenship (usually a birth certificate) and a photo identification (usually a driver's license). The local passport office transmits this information to a central office for review. The

4

Security Service will further review the application if "there are any indicators at the time . . . or throughout the process that for some reason one of the supporting documents to the application is fraudulent." The Security Service representative testified that the State Department ordinarily retains the applicant's birth certificate, which the State Department returns after it has approved the application for a passport.

The jury convicted Holmes on all seven counts after the district court instructed the jury that it could convict Holmes of aggravated identity theft only if she "knew that the means of identification at issue belonged to an actual person." The district court sentenced Holmes to a term of 54 months of imprisonment: 30 months for each of the five non-aggravated identity theft convictions to be served concurrently, and 24 months of imprisonment for each of the aggravated identity theft convictions to be served concurrently with each other and consecutive to the 30-month terms. On appeal, Holmes challenges only her convictions of aggravated identity theft.

## II. STANDARD OF REVIEW

We will sustain each of Holmes's convictions of aggravated identity theft if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Mintmire, 507 F.3d 1273, 1289

5

(11th Cir. 2007) (internal quotation marks omitted).  We "view[] the evidence in the light most favorable to the Government and . . . draw[] all reasonable inferences . . . in the Government's favor."  Id.  We will upset a conviction only if the jury "could not have found the defendant guilty under any reasonable construction of the evidence."  United States v. Chastain, 198 F.3d 1338, 1351 (11th Cir. 1999).

## III.  DISCUSSION

Holmes argues that the government failed to prove that she knew that she was using the identity of a real person.  She argues that the government did not explain how she obtained Overton's social security card or birth certificate and did not prove that she obtained the card or birth certificate in circumstances that suggest she knew that Overton is a real person.  See Flores-Figueroa, 556 U.S. at - - , 129 S. Ct. at 1893.   Holmes also argues that the government did not prove that she was aware of the rigorous verification procedures described at trial.  Holmes's argument fails.

A reasonable jury could have found beyond a reasonable doubt that, when Holmes used Overton's social security card to apply for a driver's license in October 2004 and for an identification card in December 2007, she knew that the social security card belonged to a real person.  The approval of Holmes's

6

application for a passport in January 2004 is highly probative evidence: a reasonable jury could have found that, after Holmes successfully used Overton's birth certificate to obtain a passport, Holmes knew that the birth certificate and corresponding social security card belonged to a real person. The two successful applications for Florida driver's licenses or identification cards that predate the charged offenses are similarly probative. A reasonable jury also could have found that Holmes's willingness to subject the social security card repeatedly to government scrutiny established that she knew, all along, that the social security card belonged to a real person and was not a forgery. The government did not prove that Holmes possessed detailed knowledge of the verification processes to which she subjected Overton's personal information, but a reasonable jury could have found that Holmes knew at least that the Florida and federal governments requested and sometimes retained for many weeks detailed personal information to verify the authenticity of that information. Moreover, a reasonable jury could have found that Holmes would not have sought credit using Overton's personal information if Holmes were not confident that Overton likely had an actual credit history.

## IV. CONCLUSION

Holmes's convictions are **AFFIRMED**.

7