[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-14300

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 14, 2011
JOHN LEY
CLERK

D. C. Docket No. 2:09-cr-00090-WHA-CSC-13

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

LEE EARNEST BENSON,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(October 14, 2011)

Before DUBINA, Chief Judge, CARNES, Circuit Judge, and FORRESTER,* District Judge.

PER CURIAM:

---

*Honorable J. Owen Forrester, United States District Judge for the Northern District of Georgia, sitting by designation.

The United States of America appeals the district court's order granting, in part, Defendant Lee Earnest Benson's motion for acquittal. The district court granted the motion as to Defendant's conviction, by a jury, of aggravated identity theft, 18 U.S.C. § 1028A(a)(1). The government argues that there was sufficient evidence to support the aggravated identity theft conviction, and therefore, the district court erred in acquitting Defendant.

## I.    Background

### A.    Factual and Procedural History

Defendant Lee Earnest Benson was charged by superseding indictment with conspiracy to utter and possess forged securities in violation of 18 U.S.C. §§ 371 and 513(a) (Count 1), possession or utterance of a forged security in violation of 18 U.S.C. §§ 513(a) and 2 (Count 16), mail fraud in violation of 18 U.S.C. §§ 1341 and 2 (Count 22), and aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). R-240. The four counts related to two different schemes. Counts 1 and 16 related to a scheme by Defendant, his co-Defendant Betty Ann Smoke, and two others to defraud ALFA Insurance Company ("ALFA") by cashing forged drafts. *Id*. Count 22 charged Defendant and Smoke with intentionally engaging in a scheme to submit a fraudulent electronic state income tax return, and Count 23

2

charged Defendant and Smoke with aggravated identity theft relating to that scheme.

Regarding the first scheme, evidence was presented at trial that Kristin McKeithen, who formerly worked for ALFA, distributed stolen ALFA drafts to different people, including Defendant and Smoke. R-453, 28-33, 41-43, 59. The drafts contained the name of the policyholder, claim information, and the name of the claims adjuster, all of which had been forged. *Id*. at 36, 77-82, 89-91, 98-100. Both Defendant and Betty Ann Smoke received money from the stolen ALFA drafts. *Id*. at 41-43, 85, 101, 114, 129-30. There was also evidence presented that Defendant Benson and Smoke knew one another – they worked for the same company, and Defendant did yard work for Smoke. R-454, 54. Defendant Benson deposited the proceeds he received from the forged ALFA draft in a bank account at Regions Bank. *Id*. at 137-139. The bank account was a business account for Defendant's lawn business, Lee's Lawn Care, and Defendant Benson was the only signatory. *Id*. at 111-12, 114, 116-17.

As to the second scheme, the one from which the aggravated identity theft charge arose, evidence was presented at trial that the Georgia Department of Revenue received a tax return in the name of Tierra Cowley. R-453, 69-72, 79, 86. The tax return was filed electronically and used her social security number. *Id*. A

tax refund check was issued by the Georgia Department of Revenue in the amount of $4,627, and the check was made out to Cowley and contained a social security number, the first 5 numbers of which were redacted, but the last four numbers of which were on the check and matched the last four digits of her social security number. *Id*. at 148-52. The check was mailed to an address in Wetumpka, Alabama, and the address was the same as the address found on Smoke's driver's license. *Id*. 77. Defendant Benson deposited the refund check into his Lee's Lawn Care business account at Regions Bank, and the back of the check included endorsements in the names of both Cowley and Defendant. *Id*. at 152-53.

Cowley testified at trial that her social security number ended with the same last four digits that were on the $4,627 check from the Georgia Department of Revenue, that she did not file the relevant tax return, did not allow someone else to file a Georgia tax return on her behalf, she never met Defendant before the trial, and she did not endorse the refund check or give it to Defendant. R-453, 95, 99-101. She also testified that she had previously lost an identification card that contained her full name, social security number, and birth date. *Id*. at 100-01.The government additionally presented as a witness a former investigator for the Georgia Department of Revenue, and the investigator testified that when an income tax return is filed, the Department of Revenue verifies that the name and

4

social security number match and belong to a real person. *Id*. at 72-73. If they do not match, a refund check is not mailed, and the return is not processed. *Id*. at 73.

Defendant testified on his own behalf. R-454, 144-68. He testified that he did cash the AFLA draft, *id*. at 144, but that he received the draft from "Robert." *Id*. at 144-45. According to Defendant, Robert was a guy that worked for his lawn care business. *Id*. at 145. Defendant did not know Robert's last name or exactly where he lived despite the fact that he worked with Robert "[p]ractically every day" for three years." *Id*. at 145-47. Defendant testified that Robert received the draft as payment for some tree cutting services provided to a customer, and Robert gave the draft to Defendant. *Id*. at 145. On cross-examination, Defendant revealed that he had last seen Robert in early summer 2008, June or July, but the ALFA drafts were dated August 2008. *Id*. at 147.

Defendant also testified that Robert gave him the Georgia Department of Revenue tax refund check containing Cowley's name and the last four digits of her social security number. R-454, 148. Defendant claimed that Robert owed him money, and Robert gave the check to him to pay back that debt. *Id*. at 148-49. Robert allegedly told Defendant that the refund check belonged to his girlfriend. *Id*. Defendant stated that he endorsed the check, and then cashed it – keeping half of the money and giving the remainder back to Robert. *Id*. at 149. However,

5

despite claiming to have not seen Robert since early summer 2008, Defendant did not deposit the check until September 5, 2008, *id*., and the check itself was dated September 2, 2008. R-GX68.

After the government presented its case, Defendant moved for judgment of acquittal on all four counts. R453, 140. The district court denied the motion. *Id*. After both sides had presented their cases, Defendant renewed his previous motion for judgment of acquittal, and the district court denied the motion as to Count 16 but reserved ruling on the other three counts. R-454, 168, 69. The jury found Defendant Benson guilty on all four counts. R-332. The district court then instructed the parties to file briefs regarding Defendant's motion for acquittal as to Counts 1, 22, and 23. R-454, 211.

The parties filed their briefs, and the district court denied the motion for acquittal, in part, and granted in part. The district court held that as to Counts 1, for possession or utterance of a forged security, and 22, mail fraud, there was sufficient evidence from which a reasonable jury could have found Defendant guilty. The court denied the motion for acquittal on those two counts. However, the district court granted the motion as to Count 23, and the district court focused on the issue of "whether merely possessing and negotiating this fraudulently obtained check constitutes the knowing use of another person's 'means of

6

identification' during or in relation to the underlying felony of mail fraud." District Court Order, 10. The district court held that "[w]hile . . . there was sufficient circumstantial evidence to prove beyond a reasonable doubt that Benson was guilty of mail fraud, the same evidence that sustains that conviction is not sufficient to convict on the charged aggravating offense." *Id*. The court further held that the evidence was not sufficient to show that Defendant himself knowingly used the name and social security number to obtain the check in the mail, and "such personal knowledge and personal involvement in obtaining the check is necessary to prove aggravation . . . ." *Id*. at 11. Because there was no evidence that Defendant had any involvement in using Cowley's name and social security number to obtain the fraudulent refund check, the evidence presented could not support the jury's verdict. *Id*. at 11-12.

## II     Standard of Review

This circuit reviews "*de novo* a district court's decision to grant a judgment of acquittal." *United States v. Khanani*, 502 F.3d 1281, 1295 (11th Cir. 2007). "The district court's determination that the evidence introduced at trial was insufficient to support the jury's verdict of guilt is an issue of law entitled to no deference on appeal." *United States v. Sellers*, 871 F.2d 1019, 1021 (11th Cir. 1989).

7

## III. Discussion

The government appealed the district court's order on the aggravated identity theft acquittal. The government contends that the district court erred both in interpreting controlling case law concerning the burden of proof in aggravated identity theft cases and in finding that the government did not meet its burden of proof. According to the government, the district court improperly interpreted the United States Supreme Court decision in *Flores-Figueroa v. U.S.*, 556 U.S. ___, 129 S.Ct. 1886 (2009) by holding that to find Defendant guilty for aggravated identity theft, the government had to prove that Defendant personally knew about and participated in using Cowley's identification to file the fraudulent tax return. The government contends that this was too high a burden, and under the proper interpretation of *Flores-Figueroa*, there was sufficient evidence to support the aggravated identity theft claim.

To establish a violation of § 1028A(a)(1), "the government must prove that the defendant: (1) knowingly transferred, possessed, or used; (2) the means of identification of another person; (3) without lawful authority; (4) during and in

relation to** [a predicate act, including mail fraud***]." *United States v. Hurtado*, 508 F.3d 603, 606-07 (11th Cir.2007) (footnote omitted), *abrogated on other grounds by Flores-Figueroa*, 556 U.S. ----, 129 S.Ct. 1886. In *Flores-Figueroa*, the Supreme Court held that Section "1028A(a)(1) requires the Government to show that the defendant knew that the means of identification at issue belonged to another person." *Flores-Figueroa*, 556 U.S. ____, 129 S.Ct. at 1894. The government's appeal focuses on the question of whether there was sufficient evidence presented that a reasonable jury could find that Defendant knew Cowley was a real person.****

---

** Neither party contends that the "during and in relation to" portion of the statute was not met, and therefore, we do not address the issue.

***Although he moved for an acquittal on the mail fraud conviction, the district court denied the motion, and Defendant did not appeal it.

**** There was clearly evidence presented that would support a finding that Defendant knowingly possessed or used Cowley's identity without lawful authority. Defendant admitted that he possessed and negotiated the check. Cowley testified that she did not authorize anyone to file a tax return on her behalf nor did she file the tax return that caused the relevant tax refund to be issued by the Georgia Department of Revenue. R-454, 97-98, 101, 104. Cowley also testified that the check did contain her name and the last four digits of her social security number, which she never gave to Defendant. *Id*. at 100. She also stated that she never met Defendant before. *Id*. at 99. Further, the jury clearly disbelieved Defendant's testimony about how he got the check from Robert and that the check belonged to Robert's girlfriend. "[A] statement by a defendant, if disbelieved by the jury, may be considered as *substantive evidence* of the defendant's guilt." *United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995). More specifically, "when a defendant chooses to testify, he runs the risk that if disbelieved 'the jury might conclude the opposite of his testimony is true.'" *Id*. Therefore, the jury could have inferred from this circumstantial evidence that Defendant knew he was using or possessing Cowley's identity without lawful authority.

Our decision in *United States v. Holmes*, 595 F.3d 1255 (11th Cir. 2010), controls the present case. That case "establishes that the government can rely on circumstantial evidence about an offender's misuse of a victim's identity to prove the offender knew the identity belonged to a real person." *United States v. Gomez-Castro*, 605 F.3d 1245, 1249 (11th Cir. 2010) (citing *Holmes*, 595 F.3d 1255). In *Holmes*,

> We held that a reasonable jury could have found that the government had proved that Holmes knew that a social security card and birth certificate belonged to a real person when she used them to apply for a driver's license. We reasoned that, because Holmes had obtained a line of credit and had successfully used the social security card and birth certificate to obtain a passport and two driver's licenses or identification cards before she used the victim's identity in the charged offense, a reasonable trier of fact could have found Holmes knew the identity belonged to a real person.

*Id*. Affirming the conviction, the court held that even if no evidence about the verification process had been presented, a reasonable jury could have found that the defendant "knew at least that the [state] and federal governments obtained proof of an applicant's identity to verify that identity." *Id*.

Under the reasoning of *Holmes*, we find that the district court erred in granting Defendant's motion for acquittal. The government may prove knowledge through circumstantial evidence. *Gomez-Castro*, 605 F.3d at 1249 (citing *Holmes*, 595 F.3d 1255). Even if there was no evidence that Defendant himself filed the

10

fraudulent tax return, by virtue of the evidence regarding his involvement in the mail fraud, which was bolstered by his unbelievable testimony as to how he obtained the check, as well as his actual possession of the Georgia Department of Revenue issued check containing Cowley's name and a partial social security number, a reasonable jury could have inferred that Defendant knew the identifying information he possessed belonged to a real person. From the evidence presented, the jury could have inferred that Defendant would not have engaged in this form of mail fraud scheme (filing a fraudulent tax return) unless he had knowledge that the name and social security number belonged to an actual person. *See Holmes*, 595 F.3d at 1258. Defendant's completely fanciful testimony regarding how he obtained the tax refund check could have led the jury to draw the inference that the Defendant knew all the details of the mail fraud scheme and how the fraudulent check was obtained. *See Brown*, 53 F.3d at 314 ("At least where some corroborative evidence of guilt exists for the charged offense . . . and the defendant takes the stand in his own defense, the defendant's testimony, denying guilt, may establish, by itself, elements of the offense. This rule applies with special force where the elements to be proved for a conviction include highly subjective elements: for example, the defendant's intent or knowledge . . . ."). Further, the jury certainly could have inferred that "based on ordinary human

11

experience for which no special proof is required[,]" the Defendant knew that the state government would verify the name and social security number of an individual before accepting a return and also before issuing a tax refund check. *Gomez-Castro*, 605 F.3d at 1259. This inference was bolstered by the evidence presented by the government that the Georgia Department of Revenue does in fact go through such a verification process. Additionally, Cowley testified at trial, demonstrating that she was a real person, and she confirmed that the check contained her name and her partially redacted social security number. This evidence, *in toto*, was sufficient for a reasonable jury to find that Defendant Benson had knowledge that the identification he was using belonged to another person.

## IV.  Conclusion

We find the district court erred in granting a judgment of acquittal. We reverse the district court's granting of the motion for judgment of acquittal and remand so that the district court can enter judgment on the verdict.


**REVERSED AND REMANDED**.