[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-13002
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cr-20775-RWG-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRAXTON GEOVANNI BELL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 7, 2014)

Before HULL, FAY, and EDMONDSON, Circuit Judges.

PER CURIAM:

Braxton Geovanni Bell was convicted by a jury of one count of access device fraud, in violation of 18 U.S.C. § 1029(a)(2) (Count 3 of the superseding indictment), and two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) (Counts 4 and 5). The offenses involved two Green Dot debit cards that were registered to victims identified in the indictment as "D.P." and "F.F." Tax refunds filed in the victims' names were directly deposited onto the cards. Count 4 related, specifically, to the card registered to D.P., while Count 5 related to the card registered to F.F.

Bell also pleaded guilty to one count of trafficking in and use of an unauthorized access device, in violation of 18 U.S.C. § 1029(a)(2) (Count 2 of the superseding indictment[*]). The district court imposed a total sentence of 34 months, consisting of concurrent terms of 10 months each for Counts 2 and 3, to run consecutively to concurrent statutory terms of 24 months each for Counts 4 and 5. On appeal, Bell challenges his convictions on Counts 3, 4, and 5.

---

[*] The district court severed Counts 1 and 2 of the superseding indictment. Pursuant to a plea agreement, the government dismissed Count 1. The cases were consolidated prior to sentencing.

I.

First, Bell appeals the district court's denial of his motion to suppress physical evidence, including the two Green Dot debit cards, found during an inventory search of his wallet after his arrest for marijuana possession.  He argues that the district court erred in concluding the search was justified under the inventory search and plain view doctrines.  He contends that the search exceeded the bounds of the inventory exception, as the conducting officer read handwriting on pieces of tape attached to the cards, consulted a more experienced detective, and turned the cards over for further investigation.  Bell maintains that the plain view doctrine did not authorize the seizure and further investigation of the cards, as the conducting officer testified that he was not certain, simply by looking at the cards, that a crime had been committed and, under the plain view exception, the officer was not permitted to read the notes taped to the cards.  Moreover, Bell contends, the district court failed to apply the appropriate probable cause standard.

"The Fourth Amendment demonstrates a strong preference for searches conducted pursuant to a warrant." *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996) (quotation omitted).  Still, the Fourth Amendment permits warrantless inventory searches "of property lawfully in police custody as long as that search is consistent with the police caretaking

3

function." *See United States v. O'Bryant*, 775 F.2d 1528, 1534 (11th Cir. 1985).

The Supreme Court has explained that, when a vehicle is impounded, police

officers may inventory its contents, pursuant to their caretaking role, based on

three distinct grounds: (1) "protection of the owner's property while it remains in

police custody"; (2) "protection of the police against claims or disputes over lost or

stolen property"; and (3) "protection of the police from potential danger." *South

Dakota v. Opperman*, 428 U.S. 364, 369, 96 S.Ct. 3092, 3097, 49 L.Ed.2d 1000

(1976).

Nonetheless, "[a]n inventory search is not a surrogate for investigation, and

the scope of [the] search may not exceed that necessary to accomplish the . . .

inventory." *United States v. Khoury*, 901 F.2d 948, 958 (11th Cir.), *modified on

other grounds*, 910 F.2d 713 (1990). "[T]he reasonableness of the inventory

search depends on the particular facts and circumstances." *United States v. Laing*,

708 F.2d 1568, 1571 (11th Cir. 1983). In *Khoury*, we decided that a police officer

exceeded the scope of an inventory search when -- after flipping through

defendant's notebook for items of value and determining that the notebook had no

evidentiary value -- the officer examined the notebook again and decided it had

evidentiary value. 901 F.2d at 959-60. We explained that the officer's initial

inspection was necessary to ensure nothing of value was hidden between the

notebook's pages. *Id.* at 959. But, once the officer determined that the notebook

4

contained no discrete items of value, the inventory search was complete; and the additional search of the notebook constituted an investigation. *Id.*

"The 'plain view' doctrine permits a warrantless seizure where (1) an officer is lawfully located in the place from which the seized object could be plainly viewed and [has] a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent." *United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006). The plain view doctrine applies, for example, when the police search a given area pursuant to a warrant and, in the course of their search, come across another object of incriminating character. *Id.* "The officers . . . must have probable cause to believe that the object in plain view is contraband." *Id. See also United States v. Sherriff*, 546 F.2d 604, 607 (5th Cir. 1977) (concluding that an officer's inspection of the vehicle identification numbers on two cars was authorized under the plain view doctrine where the officer had a right to be on the property where the cars were located).

Probable cause exists when, under the totality of the circumstances, a fair probability exists that contraband or evidence of a crime will be discovered in a particular place. *United States v. Tobin*, 923 F.2d 1506, 1510 (11th Cir. 1991) (*en banc*). Probable cause deals with probabilities, which are "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Smith*, 459 F.3d at 1291 (quotations omitted). "The substance of

5

all the definitions of probable cause is a reasonable ground for belief of guilt." *Id.* (quotations omitted). "Although we must decide the legal issue of whether probable cause exists . . . we do give weight to the inferences that law enforcement agents draw from the facts." *Id.* To have probable cause that an item is contraband, an officer need not "know with absolute certainty that all elements of a putative crime have been completed." *Id.* at 1292 (quotations omitted).

In *Smith*, we concluded that officers conducting a warranted search for drugs and drug paraphernalia had probable cause to think pornographic photos they discovered during the search involved minors, where officers concluded that some of the girls in the photographs looked extremely young, and one officer concluded that the girls were clearly minors, with one being likely as young as 11 years old. *Id.* at 1281, 1291-1293. We noted that the officers did not have to be correct in their assessment for probable cause to have existed, nor need they be sex crimes experts, as we were concerned with what a "reasonable and prudent officer might have perceived and inferred." *Id.* at 1291 (quotation omitted).

Here, the district court did not err in concluding that the search of Bell's wallet was justified under the inventory search exception and that, during the search, the searching officer saw items in plain view that gave him probable cause to believe a crime had been committed. The searching officer indicated that, once he arrived back at the police station, he took the items out of Bell's wallet to list

6

them on an inventory form.  When he saw the Green Dot debit cards, each of which contained a piece of tape with a name and number handwritten on it, he believed, based on his prior experience, that they were evidence of fraud.  The court's finding that the officer immediately recognized the cards as evidence of fraud was not clearly erroneous, as it was supported by the officer's testimony at the suppression hearing.  The officer's statement that he was not certain when he saw the cards that a crime had been committed does not defeat a finding of probable cause.  *See Smith*, 459 F.3d at 1291-92.

## II.

Next, Bell appeals his convictions on Counts 3, 4, and 5 on the ground that the government failed to prove essential elements of each offense.  On Count 3, he maintains that the government failed to prove he knowingly used an unauthorized access device and that he had intent to defraud.  As to Counts 4 and 5, he argues that the government failed to prove the predicate offense alleged in Count 3, the means-of-identification element, and the without-lawful-authority element.   For Count 5, specifically, he contends that there was no evidence he possessed the card registered to F.F. at the time of the predicate offense and, in any event, there was no evidence the F.F. card furthered that offense.

7

For Count 5, the government responds that the jury could reasonably conclude that the F.F. card (which was found in Bell's wallet along with the D.P. card just a few hours after he used the D.P. card to make three purchases) was part of Bell's access device fraud and would have allowed him to pay for whatever he desired to purchase at that time. Citing case law on firearm possession, the government contends that the F.F. card at least had the potential of facilitating Bell's access device fraud.

We review *de novo* a defendant's properly preserved motion for judgment of acquittal. *See United States v. Perez-Tosta*, 36 F.3d 1552, 1556 (11th Cir. 1994).

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). Accordingly, on appeal, we must "determine [whether] a reasonable fact-finder could conclude that the evidence established the defendant's guilt beyond a reasonable doubt." *United States v. Pistone*, 177 F.3d 957, 958 (11th Cir. 1999). Whether the evidence was direct or only circumstantial, we will accept all reasonable inferences that tend to support the government's case. *United States v. Williams*, 390 F.3d 1319, 1324 (11th Cir. 2004).

"A jury is free to choose among reasonable constructions of the evidence." *United States v. Vera*, 701 F.2d 1349, 1357 (11th Cir. 1983). As such, "[i]t is not

8

necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *Id.* (quotation omitted). "[R]easonable inferences, and not mere speculation, must support the jury's guilty verdict." *Perez-Tosta*, 36 F.3d at 1557.

Section 1029(a) of Title 18 provides:

Whoever –

. . .

> (2)   knowingly and with intent to defraud traffics in or uses one or more unauthorized access devices during any one-year period, and by such conduct obtains anything of value aggregating $1,000 or more during that period . . .

> shall, if the offense affects interstate or foreign commerce, be punished as provided in subsection (c) of this section.

18 U.S.C. § 1029(a).

Section 1028A(a)(1) of Title 18 provides:

> Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

18 U.S.C. § 1028A(a)(1).

Section 1028A(c) provides:

For the purposes of this section, the term "felony violation enumerated in subsection (c)" means any offense that is a felony violation of –

. . .

(4)    any provision contained in this chapter (relating to fraud and false statements), other than this section or section 1028(a)(7) . . . .

18 U.S.C. § 1028A(c).

Section 1028(d) of Title 18 provides:

In this section and section 1028A –

. . .

(7)    the term "means of identification" means any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any –

(A)    name, social security number, date of birth . . .

(C)    unique electronic identification number, address, or routing code . . .

18 U.S.C. § 1028(d).

The government can use circumstantial evidence to prove a defendant's knowledge that a means of identification at issue belonged to a real person. *See United States v. Holmes*, 595 F.3d 1255, 1258 (11th Cir. 2010).

In the context of 18 U.S.C. § 924(c)(1), the Supreme Court has said:

The phrase "in relation to" . . . at a minimum, clarifies that the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or

coincidence. . . . [T]he "in relation to" language allays explicitly the concern that a person could be punished under § 924(c)(1) for committing a drug trafficking offense while in possession of a firearm even though the firearm's presence is coincidental or entirely unrelated to the crime. Instead, the gun at least must facilitate, or have the potential of facilitating, the drug trafficking offense.

*Smith v. United States*, 508 U.S. 223, 238, 113 S.Ct. 2050, 2058-59, 124 L.Ed.2d 138 (1993) (quotations, citation, and alterations omitted). In *United States v. Timmons*, we concluded that, even if a gun the defendant possessed while committing a drug offense did not actually facilitate that offense, the gun, by its nature, had the potential of facilitating the offense, and the defendant's carrying it was therefore related to the offense. 283 F.3d 1246, 1251-52 (11th Cir. 2002).

Here, Bell properly preserved his challenge to the sufficiency of the evidence: as he moved for judgment of acquittal at the end of the government's case, and he did not present a defense case. Accordingly, *de novo* review applies.

Bell's challenges to the sufficiency of the evidence on Counts 3 and 4 lack merit. The government offered evidence showing that the Green Dot debit card he used to make three purchases on 28 June 2012 contained a piece of tape with D.P's last name on it (or what the jury could reasonably conclude was a misspelling of that name) which suggests that Bell knew the card was registered to D.P. In addition, the evidence showed that the card was registered without D.P.'s permission and that a tax refund for D.P., filed without D.P.'s permission, was deposited onto the card on 27 June 2012, the day before Bell used it to make the

11

three purchases.  Bell's three purchases used most of the funds on the card, which suggests he knew the amount on the card.  Moreover, to corroborate Bell's bad intent, the evidence showed that the other Green Dot debit card found in his wallet contained a piece of tape with F.F.'s last name; that the card was registered in F.F.'s name, without F.F.'s permission; and that a tax refund for F.F., filed without F.F.'s permission, was deposited onto the card, also on 27 June 2012.

We conclude that the government failed to provide sufficient evidence on Count 5.  The government's argument that the F.F. card had the potential to facilitate Bell's purchases with the D.P. card on 28 June 2012, as Bell could have used the F.F. card to pay for whatever he desired to purchase on that date, is merely speculative.  The government offered no evidence that Bell desired to purchase anything additional on 28 June 2012, or that he intended to use the F.F. card on that date.  *See Perez-Tosta*, 36 F.3d at 1557.  In addition, Count 3 was based on actual use of the D.P. card.  The evidence at trial did not establish that Bell's possession of the F.F. card facilitated or had the potential to facilitate purchases made by using the D.P. card on 28 June.  The government's analogy to firearm possession cases seems misplaced to us.

12

III.

Bell argues, for the first time and on appeal, that the district court constructively amended Counts 4 and 5 of the indictment when it instructed the jury that "means of identification" included any "name or number" that could be used to identify a person and that an account number is a means of identification. He maintains that the instruction broadened the bases for conviction because the indictment charged only that he used the names F.F. and D.P.  He contends that the jury likely convicted him on the basis of his possession and use of account numbers, as, he argues, the evidence linking him to the use of other persons' names was minimal, while evidence on his use of account numbers was considerable.

We review *de novo* whether the district court's jury instructions constructively amended the indictment.  *United States v. Gutierrez*, 745 F.3d 463, 473 (11th Cir. 2014).  We review objections raised on appeal that were not timely raised in the district court for plain error.  *See* Fed.R.Crim.P. 52(b); *United States v. Madden*, 733 F.3d 1314, 1322 (11th Cir. 2013) (applying plain error review to constructive amendment claim).  Plain error review requires that we find "an 'error' that is 'plain' and that 'affect[s] substantial rights.'"  Fed.R.Crim.P. 52(b); *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993).

"A fundamental principle stemming from [the Fifth Amendment] is that a defendant can only be convicted for a crime charged in the indictment," as "[i]t would be fundamentally unfair to convict a defendant on charges of which he had no notice." *United States v. Keller*, 916 F.2d 628, 633 (11th Cir. 1990). An indictment is amended "when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment." *United States v. Dennis*, 237 F.3d 1295, 1299 (11th Cir. 2001). A jury instruction that allows the jury to consider and convict upon an alternative element of the offense -- one not listed in the indictment -- is an impermissible constructive amendment of the indictment and constitutes reversible error. *Stirone v. United States*, 361 U.S. 212, 218-19, 80 S.Ct. 270, 274, 4 L.Ed.2d 252 (1960).

In determining whether an indictment was constructively amended, we look at whether the prosecutor's acts or the court's instructions, viewed in context, literally or effectively expanded the indictment. *United States v. Behety*, 32 F.3d 503, 508-09 (11th Cir. 1994). For this purpose, the jury instructions must be considered in the light of the evidence presented and the government's trial theory. *United States v. Williams*, 527 F.3d 1235, 1246-47 (11th Cir. 2008).

First, we review Bell's constructive amendment claim for plain error, as he failed to raise it before the district court. We find no error (even less, plain error)

14

in the district court's instruction to the jury. The relevant instruction was consistent with the statutory definition of "means of identification" in 18 U.S.C. § 1028(d)(7). That the instruction permitted the jury to consider Bell's use of account numbers, in addition to his use of the names D.P. and F.F., does not establish a constructive amendment, because § 1028(d)(7) provides that a "means of identification" includes a name, used, alone or in conjunction with any other information, to identify a specific individual. The instruction merely clarified that an account number would properly be considered as a part of that identifying framework. It did not invite the jury to convict without regard to the use of the names, and there is no reason to suspect that the jury might have done so. *See Madden*, 733 F.3d at 1323 (explaining prejudice).

Accordingly, Bell's convictions on Counts 3 and 4 are **AFFIRMED,** his conviction on Count 5 is **VACATED,** and the case is **REMANDED** for proceedings consistent with this opinion.

AFFIRMED in part. VACATED and REMANDED in part.

15