[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14622
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cr-00457-SCJ-JSA-2


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

OLAYINKA OLANIYI,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(December 2, 2019)


Before WILLIAM PRYOR, GRANT and BLACK, Circuit Judges.

PER CURIAM:

Olayinka Olaniyi appeals his convictions for conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, computer fraud, in violation of 18 U.S.C. § 1030(a)(4), and aggravated identity theft, in violation of 18 U.S.C. § 1028A. First, Olaniyi contends the district court erred by failing to suppress (a) all tangible evidence seized during the search of his residence in Malaysia, and (b) his statements to U.S. law enforcement officials during his arrest and interrogation. Second, he asserts the evidence was insufficient for a reasonable juror to conclude beyond a reasonable doubt he knew that Tasha Story, the victim of one of his aggravated identity theft counts, was a real person. Finally, he argues the district court abused its discretion by denying his motion for mistrial because he was prejudiced by evidence of uncharged criminal conduct. After review, we affirm.

## I.  DISCUSSION

### A.  Motion to Suppress

#### 1.  Tangible evidence

"The general rule is that evidence obtained from searches carried out by foreign officials in their own countries is admissible in United States courts, even if the search would not otherwise comply with United States law or the law of the foreign country." *United States v. Emmanuel*, 565 F.3d 1324, 1330 (11th Cir. 2009). We have recognized two narrow exceptions to this rule. *Id.* "The first exception is that evidence from foreign searches is inadmissible if the conduct of

the foreign officials during the search 'shocks the judicial conscience.'" *Id.* This exception derives from a federal court's inherent supervisory powers over the administration of federal justice. *Id.* The "shock the conscience" standard is not well-defined, but it "is meant to protect against conduct that violates fundamental international norms of decency." *Id.* at 1331. The second exception is based on a defendant's Fourth Amendment rights and provides "evidence from foreign searches is subject to the exclusionary rule if American law enforcement officials substantially participated in the search or if the foreign officials conducting the search were actually acting as agents for their American counterparts." *Id.* at 1330.

The district court did not err by refusing to suppress the evidence seized during the search of Olaniyi's residence, specifically the HP laptop and Olaniyi's cell phone. *See id.* at 1330 (explaining a district court's denial of a motion to suppress presents a mixed question of fact and law, and we review the factual findings for clear error and the interpretation and application of law de novo). The general rule is this evidence is admissible because it was seized by foreign officials in their own countries, and Olaniyi is a non-resident with no connections to the United States. As to the two exceptions identified in *Emmanuel*, Olaniyi failed to show the conduct of the Royal Malaysian Police (RMP) officers shocked the judicial conscience. Even assuming a beating occurred, the evidence supports it occurred after the RMP officers had seized the items, suggesting the beating did

3

not effectuate the seizure.  Moreover, while the alleged beating may violate

American norms of decency, Olaniyi did not show it violates international norms

of decency.  *See id.* at 1331.  The second exception is inapplicable because Olaniyi

concedes he is not protected by the Fourth Amendment.  *See United States v.*

*Verdugo-Urquidez*, 494 U.S. 259, 271, 274-75 (1990) (stating the Fourth

Amendment does not apply to the search and seizure by U.S. agents of property

that is owned by a nonresident alien and located in a foreign country as aliens do

not enjoy the protections of the Fourth Amendment if they have no previous

significant voluntary connection with the United States).

 *2.  Statements*

 Under the Fifth Amendment to the U.S. Constitution, the government may

not use an involuntary confession against a defendant in a criminal trial.  *United*

*States v. Thompson*, 422 F.3d 1285, 1295 (11th Cir. 2005).  The threshold inquiry

is whether the defendant was informed of his *Miranda*[1] rights, and if so, whether

he voluntarily waived those rights.  *See United States v. Barbour*, 70 F.3d 580,

584-85 (11th Cir. 1995).  The Supreme Court has articulated a two-part inquiry

into whether a defendant's waiver of *Miranda* rights was voluntary, knowing, and

intelligent.  *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

> First, the relinquishment of the right must have been voluntary in the
> sense that it was the product of a free and deliberate choice rather than

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

intimidation, coercion, or deception.  Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.  Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Id.* (quotations omitted).

The district court did not err by refusing to suppress Olaniyi's statements to the FBI agents.  *See Barbour*, 70 F.3d at 584 (stating the district court's conclusion on the voluntariness of a confession or the waiver of *Miranda* rights raises questions of law to be reviewed *de novo*).  First, Olaniyi was given his *Miranda* warnings, and the totality of the circumstances surrounding his interview reveal both an uncoerced choice to speak and the requisite level of comprehension of the rights he was giving up by speaking.  *See Burbine*, 475 U.S. at 421.  At the outset, Agent Fowler made sure Olaniyi understood English, and Olaniyi assured him that he did.  Throughout the course of the interview, Olaniyi did not appear to have trouble understanding or speaking English.  Fowler also explained he and Agent Hunt were from the United States and worked for the FBI, and Olaniyi acknowledged he understood.  Fowler and Hunt used a conversational tone throughout the interview and did not raise their voices.  They offered Olaniyi water and kept the interview to a reasonable time of just under two hours.  *See Thompson,* 422 F.3d at 1295-96 (stating examples of sufficiently coercive conduct includes subjecting the defendant "to an exhaustingly long interrogation, the

5

application of physical force or the threat to do so, or the making of a promise that induces a confession").

Moreover, the totality of the circumstances show Olaniyi's statements were voluntary. Olaniyi comprehended the situation and tried to negotiate with Fowler and Hunt, stating he would tell them everything if they agreed to protect his rights by not outing him as a snitch. He wanted something in return for giving information and chose to speak to the agents because he believed he would benefit from the bargain, not because he was coerced by them. Additionally, Olaniyi's confession was not causally linked to the RMP officers' alleged beating. Olaniyi's interview occurred hours after his arrest by different officials from a different sovereign. Olaniyi confessed because he felt the agents could protect him and get him out of Malaysia. Fowler and Hunt did not participate in the arrest and were not aware of Olaniyi's alleged beating.

## B. *Judgment of Acquittal*

The aggravated identity theft statute provides, a person who, "during and in relation to any felony violation enumerated in [18 U.S.C. § 1028A(c)], knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years." 18 U.S.C. § 1028A(a)(1). That statute requires the government show the defendant knew the means of

6

identification at issue belonged to another person.  *Flores-Figueroa v. United States*, 556 U.S. 646, 657 (2009).  In "the classic case of identity theft," the knowledge element could be proven by:

> For example, where a defendant has used another person's identification information to get access to that person's bank account, the Government can prove knowledge with little difficulty.  The same is true when the defendant has gone through someone else's trash to find discarded credit card and bank statements, or pretends to be from the victim's bank and requests personal identifying information. Indeed, the examples of identity theft in the legislative history (dumpster diving, computer hacking, and the like) are all examples of the types of classic identity theft where intent should be relatively easy to prove, and there will be no practical enforcement problem.

*Id.* at 656.

Viewing the evidence in the light most favorable to the Government, a jury could reasonably conclude beyond a reasonable doubt Olaniyi knew Tasha Story was a real person.  *See United States v. Descent*, 292 F.3d 703, 706 (11th Cir. 2002) (explaining a district court's denial of a motion for judgment of acquittal is reviewed de novo, construing all facts and inferences in the light most favorable to the government, and affirming if a reasonable fact finder could conclude the evidence established the defendant's guilt beyond a reasonable doubt).  The evidence showed: (1) all Olaniyi's fraudulent activities involved real, not fictitious, people; (2) he knew about romance fraud and witnessed people participating in it; (3) he obtained Story's bank information, including her name, home address, bank address, bank account and routing numbers, online username and password, and

7

her security questions and answers; (4) he exchanged the personal information of real people, including Story's, with Damilola Ibiwoye; and (5) he needed bank accounts of real people in order to deposit money from his fraudulent activities.

Although Olaniyi argues the account could have been a real account in a fictitious name, the record did not demand that construction of the evidence, as there was no evidence that Olaniyi ever used fictitious identities.  Rather, the evidence showed he exclusively used bank accounts for real people and Story was no different, which was a reasonable construction of the evidence under which a reasonable jury could find him guilty.  *See United States v. Holmes*, 595 F.3d 1255, 1257 (11th Cir. 2010) (stating we will "upset a conviction only if the jury could not have found the defendant guilty under any reasonable construction of the evidence" (quotations omitted)).

## C.  Motion for Mistrial

Federal Rule of Evidence 404(b) provides evidence of other crimes, wrongs, or acts is not admissible to prove a defendant's character in order to show that on a particular occasion the person acted in accordance with the character.  Fed. R. Evid. 404(b).  Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  *Id.*  Upon a defendant's request, the prosecutor must provide

8

reasonable notice of the general nature of any such evidence that the prosecutor intends to introduce at trial. *Id.*

The district court did not abuse its discretion by denying Olaniyi's motion for mistrial. *See United States v. Capers*, 708 F.3d 1286, 1298 (11th Cir. 2013) (reviewing a district court's decision not to grant a mistrial for abuse of discretion). The evidence of his unindicted conduct was not extrinsic evidence under Rule 404(b) because it was inextricably intertwined with the evidence of his charged offenses. *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007) (explaining "evidence of criminal activity other than the charged offense is *not* extrinsic under Rule 404(b), and thus falls outside the scope of the Rule, when it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense" (quotations omitted)). Fowler's brief testimony regarding uncharged conduct from 2011 and 2012 showed Olaniyi and Ibiwoye had been stealing personal information from others well before they were charged and this was a system they had been working on and perfecting for years. They began living together in 2011 and worked together and developed contacts in the United States to carry out the charged offenses. The testimony spoke to the background and set-up of the charged crimes and was not extrinsic under Rule 404(b). *See id.*

9

("Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive, and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." (alterations omitted)).  As the evidence was not extrinsic under Rule 404(b), the Government was not required to give pretrial notice of its intent to use the evidence at trial.

Further, the probative value of the evidence was not substantially outweighed by any unfair prejudice caused by that evidence.  *See* Fed. R. Evid. 403 (providing a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence").  Fowler did not testify to the details of Olaniyi's and Ibiwoye's uncharged conduct in 2011 and 2012, and the testimony was brief.  And any unfair prejudice possibly caused by the introduction of this evidence was mitigated by the trial judge's limiting instruction.  *See United States v. Butler*, 102 F.3d 1191, 1196 (11th Cir. 1997) (explaining the law assumes the jury follows the court's instructions).  The trial judge cautioned the jurors they were there to try only the conduct charged in the indictment and instructed them to disregard Fowler's testimony regarding the uncharged conduct.  He asked them to

raise their hands if they could not follow that instruction, and no one responded.

Olaniyi therefore cannot show a reasonable probability that, but for the testimony,

he would have been found not guilty. *See Capers*, 708 F.3d at 1298 (stating a

district court should grant a mistrial where the defendant's substantial rights are

prejudicially affected which occurs when there is a reasonable possibility that, but

for the alleged error, the outcome of the trial would have been different).

## II.  CONCLUSION

First, the district court did not err by failing to suppress the tangible

evidence seized from Olaniyi's residence or his statements to U.S. law

enforcement officials.  Second, the evidence was sufficient for a reasonable juror

to conclude beyond a reasonable doubt that Olaniyi knew Tasha Story was a real

person.   Third, the district court did not abuse its discretion in denying Olaniyi's

motion for mistrial.  Accordingly, we affirm.

**AFFIRMED.**