[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-12557

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 13, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-21122-CR-DLG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

VIELKA MERCEDES GOMEZ-CASTRO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 13, 2010)

Before PRYOR and FAY, Circuit Judges, and QUIST,[*] District Judge.

_____

[*] Honorable Gordon J. Quist, United States District Judge for the Western District of
Michigan, sitting by designation.

PRYOR, Circuit Judge:

The question presented by this appeal is whether the government, in its prosecution of an offender for aggravated identity theft, 18 U.S.C. § 1028A(a)(1), can rely on circumstantial evidence about the offender's misuse of the victim's identity to satisfy its burden of proving that the offender knew the identity belonged to a real person. Vielka Mercedes Gomez-Castro appeals her conviction of aggravated identity theft for knowingly possessing and using the means of identity of another when she attempted to enter the United States on a passport that bore the identity of another person. Id. During the pendency of this appeal, the Supreme Court decided Flores-Figueroa v. United States, 556 U.S. ___, 129 S. Ct. 1886 (2009), which held that section 1028A requires the government to prove beyond a reasonable doubt that the accused knew the means of identity at issue belonged to a real person. Gomez-Castro argues that the government failed to prove at her bench trial that she knew she had used the identity of a real person. Because circumstantial evidence supports the finding of the district court that Gomez-Castro knew the means of identity belonged to a real person, we affirm her conviction.

## I. BACKGROUND

Gomez-Castro, a citizen of the Dominican Republic, arrived at Miami

2

International Airport on November 11, 2008, and presented to a customs and border protection officer a United States passport that bore her photograph, but someone else's name. Upon further investigation, a customs and border protection officer determined that Gomez-Castro had falsely identified herself to gain entry into the United States and took her into custody.

In December 2008, a federal grand jury returned a three-count indictment against Gomez-Castro that alleged she illegally reentered the United States after having previously been deported, 8 U.S.C. § 1326(a); falsely and willfully represented herself to be a citizen of the United States when she attempted to gain entry into the United States, 18 U.S.C. § 911; and knowingly possessed and used a means of identity of another when she presented a passport to an officer of the United States to gain entry into the United States, id. § 1028A(a)(1). On February 2, 2009, Gomez-Castro pleaded guilty to reentering the country illegally and falsely and willfully representing herself to be a citizen. Later that month, the district court held a bench trial on the charge of aggravated identity theft.

At trial, the government proved by stipulation that Gomez-Castro is a citizen of the Dominican Republic. Gomez-Castro was forcibly removed from the United States and returned to the Dominican Republic on April 10, 2001. On or about November 11, 2008, Gomez-Castro arrived at Miami International Airport from

3

the Dominican Republic. Gomez-Castro had not obtained permission to reenter the United States. At passport control, Gomez-Castro falsely presented herself as a citizen of the United States with a passport that bore the name of Rosa Maria Rivera Collazo, but contained Gomez-Castro's photograph. Customs and border protection officers escorted Gomez-Castro to baggage claim where they inspected her bags and found a birth certificate issued by Puerto Rico, a social security card, a New York driver's license, a New York benefits card, two credit cards, and a bank card all issued in the name of Collazo. Officers also found a passport issued by the Dominican Republic, which revealed Gomez-Castro's true identity.

The parties stipulated that the Puerto Rico Demographic Registry had confirmed the authenticity of the Puerto Rican birth certificate issued to Collazo and that Collazo was a real person. The parties stipulated that Gomez-Castro's real name was Vielka Mercedes Gomez-Castro. The parties stipulated that Gomez-Castro had purchased the birth certificate and social security card for $2,500, and with those documents was able to obtain credit cards, a driver's license, insurance cards, and a United States passport in the name of Collazo.

After the government read the stipulated facts into the record and the district court admitted the accompanying exhibits, Gomez-Castro moved for a judgment of acquittal on the ground that "under the aggravated identity theft statute, the

government must prove that Gomez-Castro knew that [Collazo] was a real person," and the government failed to meet this burden. The district court denied the motion because it was bound by our decision in United States v. Hurtado, 508 F.3d 603 (11th Cir. 2007), which held that section 1028A did not require the government to prove the accused knew that the means of identity belonged to a real person. The district court found, in the alternative, that "there is certainly enough evidence in the record for the Court to infer that the defendant knew that Rosa Maria Rivera Collazo was a real person." The district court explained that, because Gomez-Castro had paid $2,500 for the birth certificate and social security card and repeatedly had used those forms of identification to obtain credit cards, a driver's license, insurance cards, and a United States passport, the government had proved, beyond a reasonable doubt, that Gomez-Castro knew Collazo was a real person.

The district court convicted Gomez-Castro of aggravated identity theft. The district court then sentenced Gomez-Castro to 34 months of imprisonment, with concurrent terms of 10 months for the two counts to which she pleaded guilty, and a consecutive term of 24 months for aggravated identity theft. The district court also ordered Gomez-Castro to serve one year of supervised release.

## II. STANDARD OF REVIEW

Gomez-Castro's conviction must be upheld if "any rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt." United States v. Mintmire, 507 F.3d 1273, 1289 (11th Cir. 2007). We view "the evidence "in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor." United States v. Harris, 20 F.3d 445, 452 (11th Cir. 1994).

### III. DISCUSSION

Gomez-Castro contends that the government failed to prove beyond a reasonable doubt that she knew Collazo was a real person. She argues that her previous deportation and the sum she paid for Collazo's identifications tend to prove only that she hoped the identifications were real, but not that she knew they belonged to a real person. Gomez-Castro concedes that the government can rely on circumstantial evidence to prove that she knew the means of identity belonged to a real person, but insists that the only relevant evidence concerns the circumstances in which she obtained the birth certificate and the social security card, not the circumstances in which she later used the documents.

Gomez-Castro's argument fails. Gomez-Castro's entire course of conduct before she used Collazo's identity to gain entry into the United States is relevant to prove that Gomez-Castro knew Collazo was a real person. Both the circumstances in which an offender obtained a victim's identity and the offender's later misuse of

6

that identity can shed light on the offender's knowledge about that identity.

Gomez-Castro argues and we agree that the government must prove more than that the defendant used a false identity. Section 1028A required the government to prove that Gomez-Castro knew that the identity listed on the passport she presented to an officer at the border belonged to a real person. Flores-Figueroa, 129 S. Ct. at 1894; see also 18 U.S.C. § 1028A(a)(1). The Supreme Court explained in Flores-Figueroa that it may be more difficult for the government to prove knowledge without evidence that the accused acquired the means of identity in circumstances that, standing alone, suggest the accused knew the means of identity belonged to a real person. 129 S. Ct. at 1893. The Supreme Court also gave a few examples of circumstances where "intent is generally not difficult to prove": the accused acquired the means of identity from a trash bin, by accessing information that had been collected for a permitted purpose, or by hacking into a computer. Id. But this list of examples does not foreclose the possibility of proving knowledge in a more difficult case.

Our decision in United States v. Holmes, 595 F.3d 1255 (11th Cir. 2010), establishes that the government can rely on circumstantial evidence about an offender's misuse of a victim's identity to prove the offender knew the identity belonged to a real person. We held that a reasonable jury could have found that the

7

government had proved that Holmes knew that a social security card and birth certificate belonged to a real person when she used them to apply for a driver's license. Id. at 1258. We reasoned that, because Holmes had obtained a line of credit and had successfully used the social security card and birth certificate to obtain a passport and two driver's licenses or identification cards before she used the victim's identity in the charged offense, a reasonable trier of fact could have found Holmes knew the identity belonged to a real person. Id.

A rational trier of fact could have found beyond a reasonable doubt that Gomez-Castro knew Collazo was a real person when Gomez-Castro presented the passport with Collazo's identity to the customs and border protection officials. After being forcibly removed from the United States on April 10, 2001, Gomez-Castro attempted to reenter the United States in 2008 with a passport that bore the name Collazo. Gomez-Castro obtained the passport with the use of a birth certificate and social security card that also bore the name Collazo. Gomez-Castro paid the large sum of $2,500 for the birth certificate and social security card. Before she presented the passport for entry in 2008, Gomez-Castro had repeatedly and successfully tested the authenticity of the birth certificate and social security card: she used them to obtain a New York driver's license and benefits card, two credit cards, a bank card, and the United States passport used in this crime. This

8

circumstantial evidence supports a finding that Gomez-Castro knew the Collazo identity belonged to a real person when she later presented the passport bearing that identity to the border officer. See id.

Gomez-Castro argues that our decision in Holmes is distinguishable because the government, in that case, presented evidence of the rigorous verification processes used by the government for the issuance of licenses to drive and passports. We disagree. In Holmes, we rejected the argument that the government had to prove that Holmes was aware of the rigorous verification processes used by the federal and state governments. Id. We explained that a reasonable jury could have found that Holmes knew at least that the federal and state governments routinely obtain an applicant's identity to verify the authenticity of that identity. Id. That knowledge can be inferred reasonably based on ordinary human experience for which no special proof is required; a trier of fact can rely on common sense. See United States v. Cruz-Valdez, 773 F.2d 1541, 1546–47 (11th Cir. 1985) (en banc); see also Head v. Hargrave, 105 U.S. 45, 51 (1882) ("[T]he jury [can] very properly exercise their own judgment and apply their own knowledge and experience in regard to the general subject of inquiry." (internal quotation marks omitted)); United States v. Marino, 562 F.2d 941, 944 (5th Cir. 1977) ("[J]urors are not to be presumed ignorant of what everybody else knows.

9

And they are allowed to act upon matters within their general knowledge, without any testimony on those matters." (internal quotation marks omitted)).  Even if the government did not present evidence about the verification processes used by the state and federal governments, a rational trier of fact could have found that Gomez-Castro knew at least that the New York and federal governments obtained proof of an applicant's identity to verify that identity.  Drawing all reasonable inferences in favor of the government, a rational trier of fact could have found beyond a reasonable doubt that Gomez-Castro knew the identity belonged to a real person when she presented the passport to gain entry into the United States.

## IV.  CONCLUSION

Gomez-Castro's conviction is **AFFIRMED.**