[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-12584
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 9, 2012
JOHN LEY
CLERK

D. C. Docket No. 1:09-cr-20865-ASG-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LENIN NOVAS,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 9, 2012)

Before TJOFLAT, EDMONDSON and PRYOR, Circuit Judges.

PER CURIAM:

Lenin Novas appeals his convictions of two counts of aggravated identity

theft. 18 U.S.C. § 1028A. Novas argues that he was entitled to an acquittal because the United States failed to prove that he knew that the data encoded on his counterfeit credit cards belonged to a real person. Novas also challenges, for the first time, a jury instruction that the United States could rely on circumstantial evidence involving misuse of a credit card to prove that Novas knew the credit cards belonged to another person. We affirm.

## I. BACKGROUND

Agents of the Secret Service placed Novas under surveillance after he visited the home of Carlos Rodriguez, who was a suspect in an ongoing investigation involving credit card fraud. On August 26, 2009, Novas used a credit card to purchase goods at a Walmart store in Florida City, Florida. Agent Jacob Ellis obtained a receipt of the transaction, which showed that Novas charged his purchases to a credit card with an account number of 0924 and signed the receipt as "J. Baez." Ellis discovered that Capital One had established account 0924 for "D.D.," and that Novas was using a counterfeit credit card encoded with data about D.D.'s account. When Novas was unsuccessful in using the counterfeit credit card later at a different Walmart store, he charged his purchases to a second credit card with an account number of 6509 and signed the receipt as "J. Baez." Ellis investigated the second transaction and discovered that Novas was using a

2

counterfeit credit card encoded with data about account 6509 that First Citizens Bank had established for "H.B." After further investigation, Ellis discovered that Novas had used the two counterfeit credit cards repeatedly.

Novas consented to an interview with Ellis, during which Novas admitted to using counterfeit credit cards and associating with Rodriguez. Novas confessed that he had signed receipts for the two counterfeit cards using the false name "J. Baez" and that he had a fraudulent driver's license identifying him as "J. Baez." Novas admitted that, for three months, he had been using counterfeit credit cards provided by Richard Jerez. Novas stated that Jarez provided bundles of 5 to 10 cards that he would deliver in person or mail from New York. Novas knew that Rodriguez was involved with counterfeit credit cards, but Novas disclaimed any knowledge about Rodriguez's illegal business. Ellis arrested Novas and seized from Novas three credit cards that he had obtained from BankAmericard, Chase, and Bank Atlantic.

Novas was charged with two counts of using a counterfeit access device, id. § 1029(a)(1), and two counts of aggravated identity theft for stealing the identities of "D.D." using his means of identification ending in number "0924" and of "H.B." using his means of identification ending in number "6509," id. § 1028A(a)(1). In April 2010, a jury found Novas guilty of the two counts

3

involving an access device.  The jury failed to return verdicts on the two counts of identity theft, and the district court declared a mistrial on the two counts.

Before Novas's second trial, the United States submitted a proposed jury instruction about aggravated identity theft.  See Eleventh Circuit Pattern Jury Instructions (Criminal Cases), Trial Instruction 40.3.  The proposed instruction stated that to determine "whether the Defendant knew that the means of identification . . . belonged to an actual person" the jury could "consider evidence that the means of identification was used successfully by the Defendant."  Novas moved to strike the phrase "used successfully" and argued that the phrase as used in our decisions in United States v. Holmes, 595 F.3d 1255 (11th Cir. 2010), and United States v. Gomez-Castro, 605 F.3d 1245 (11th Cir. 2010), pertained solely to the theft of personal identity documents.  The district court disagreed and denied Novas's motion.  Novas did not object to the statement in the proposed instruction that "[t]he Government can also rely on circumstantial evidence about an offender's misuse of a victim's means of identification to prove the offender knew the means of identification belonged to a real person."

At trial, victims D.D. and H.B. testified that Novas had made unauthorized charges to their credit card accounts.  D.D. testified that he lived in California; had received a credit card from Capital One with an account number of 0924; and had

4

not authorized four charges that Novas made to D.D.'s credit card account in Miami and Florida City, Florida, on August 26, 2009. H.B. testified that he lived in North Carolina; had received a company credit card from First Citizens Bank with an account number of 6509; and had not authorized eight charges that Novas made to that credit card account in Miami, Florida, between August 25 and 27, 2009. Both D.D. and H.B. testified that they never had shared their cards with another person and were unaware a person had misappropriated data about their credit card accounts.

Cristy Dufour, a security officer with Capital One, and Gustavo Schmidt, a security officer with First Citizens Bank, testified about the process used to determine whether a credit card is valid and the process by which their companies authenticated credit cards. Dufour and Schmidt testified that their companies verified the identity of an applicant before issuing a credit card and determined that an account number was valid before approving any transaction. Dufour and Schmidt explained that credit card transactions involve a three-step process: the customer swipes a credit card in a card reader; the data encoded in the magnetic strip on the back of the card is transferred to the issuing company; and the issuing company examines the data and either approves or denies the transaction. Dufour stated that Capital One would approve a transaction if it had issued the account

5

number and the account was valid, and Schmidt testified that First Citizens would approve a transaction if the account was valid, credit was available, and the card had not expired. Dufour and Schmidt explained that the credit cards used by Novas had been encoded with data to charge to the accounts that Capital One and First Citizens had established for D.D. and H.B., but the name of the cardholders had been modified to "J. Baez."

Two employees of Walmart and an employee of Publix testified that their stores would complete a transaction only if a credit card company transmitted to the stores a code that approved the charge. All three employees testified that they knew a credit card had a valid account number if its issuing company approved the transaction. The Walmart employees also testified that they had never heard of a person fabricating a valid 16-digit account number.

Agent Ellis testified about his investigation, Novas's admissions, and how data is modified to create counterfeit credit cards. Ellis explained that a person steals the account data encoded on an original credit card and changes the name of the cardholder. The minor modification does not impede access to the credit card account because the issuing company verifies the account number instead of the name of the cardholder in determining whether to approve or deny a transaction. Ellis also explained that a person cannot select successfully 16 random numbers for

a credit card because the account number is connected to a specific expiration date and security code.

After the United States rested its case, Novas moved for a judgment of acquittal. Novas argued that the evidence about his repeated use of the two counterfeit credit cards was insufficient to prove that he knew the data on those cards belonged to a real person. The district court denied Novas's motion.

The district court gave its jury instructions and submitted the case to the jury. The district court modified the jury instruction proposed by the United States and instructed the jury as follows: "In determining whether the defendant knew that the means of identification at issue belonged to an actual person, the government can rely on circumstantial evidence about an offender's misuse of a victim's means of identification." The jury found Novas guilty of stealing the means of identification of D.D. and H.B. The district court sentenced Novas to two concurrent terms of 24 months of imprisonment.

## II. STANDARDS OF REVIEW

We apply two standards of review in this appeal. We review <u>de novo</u> the denial of a motion for a judgment of acquittal and "consider the evidence 'in the light most favorable to the government, with all inferences and credibility choices drawn in the government's favor,'" <u>United States v. DuBose</u>, 598 F.3d 726, 729

7

(11th Cir. 2010) (quoting United States v. LeCroy, 441 F.3d 914, 924 (11th Cir. 2006)), "'whether the evidence is direct or circumstantial,'" United States v. Doe, 661 F.3d 550, 560 (11th Cir. 2011) (quoting United States v. Mieres–Borges, 919 F.2d 652, 656–57 (11th Cir. 1990)). When a defendant fails to object to a jury instruction, we review for plain error to determine whether an error occurred, if it was plain, and whether it affected substantial rights. United States v. Barrington, 648 F.3d 1178, 1190 (11th Cir. 2011).

### III. DISCUSSION

Novas admits that he used counterfeit credit cards containing data used to identify and access the credit accounts of D.D. and H.B., but Novas argues that the United States failed to prove that he knew that the data encoded on the counterfeit cards belonged to other persons. Novas argues that an allegedly erroneous instruction to the jury relieved the United States of its burden to prove that Novas knew the data was a means of identification for D.D. and H.B. We resolved questions about the type and quantity of evidence required to prove knowledge in Holmes, 595 F.3d 1255, Gomez-Castro, 605 F.3d 1245, and Doe, 661 F.3d 550. We explained that, because "[g]uilty knowledge can rarely be established by direct evidence," United States v. Suba, 132 F.3d 662, 673 (11th Cir. 1998) (mail fraud), the United States may rely on "[e]vidence of surrounding circumstances," United

8

States v. Poole, 878 F.2d 1389, 1392 (11th Cir. 1989) (possession with intent to distribute), to establish that a defendant knows the means of identification he uses belongs to a real person. Holmes, 595 F.3d at 1258; Gomez-Castro, 605 F.3d at 1248; Doe, 661 F.3d at 563–64. In the light of these decisions, Novas's challenges to his convictions fail.

"Both the circumstances in which an offender obtain[s] a victim's identity and the offender's later misuse of that identity can shed light on the offender's knowledge about that identity," Gomez-Castro, 605 F.3d at 1248, and the circumstances in which Novas acquired and used repeatedly the two counterfeit credit cards allowed the jury to infer reasonably that Novas knew the cards belonged to other persons. Novas acquired the two counterfeit cards from a supplier who had already proved reliable by providing several counterfeit credit cards in the preceding three months. Novas, an experienced fraudster, ensured that the two counterfeit cards were encoded with a fictitious name that he could verify using a fraudulent identification card. See id. at 1249. The United States introduced evidence about the verification process used by credit card companies to eliminate the use of fraudulent cards, and Novas's experience with and successful use of other counterfeit credit cards proved that he was familiar with and confident that the two counterfeit cards could withstand the verification

process.  See Doe, 661 F.3d at 563; Holmes, 595 F.3d at 1258.

"[K]nowledge can be inferred reasonably based on ordinary human experience," Gomez-Castro, 605 F.3d at 1249, and Novas's possession of three credit cards in his name established that he had undergone the application process that credit card companies use to establish accounts.  Based on that experience, a jury could reasonably infer that Novas knew that the approval of transactions for the two counterfeit cards meant that they contained data for other persons.  Novas's "repeated and successful testing of the authenticity of [the] victim[s'] identifying information [that had been encoded on the counterfeit credit cards] . . . [also provided] powerful circumstantial evidence that [he] knew the identifying information belonged to a real person as opposed to a fictitious one."  Doe, 661 F.3d at 562–63; see, e.g., Gomez-Castro, 605 F.3d at 1249; Holmes, 595 F.3d at 1258.  The district court did not err when it denied Novas's motion for a judgment of acquittal.

Because "misuse of [an] identity can shed light on the offender's knowledge about that identity," Gomez-Castro, 605 F.3d at 1248, the district court did not err by instructing the jury that the United States "can rely on circumstantial evidence about [Novas's] misuse of [the] victim[s'] means of identification . . . [i]n determining whether [he] knew that the means of identification . . . belonged to a

10

real person." Novas argues that the instruction violated his right of due process under the Fifth Amendment by conveying to the jury that it was required to presume from Novas's use of the counterfeit cards that he knew the cards belonged to a real person, but we disagree. The district court instructed the jury that the United States can rely on the circumstantial evidence of misuse. Use of the permissive word "can" instead of a mandatory term, such as "shall" or "must," allows the jury to draw a reasonable inference about whether a defendant knew that the data encoded on counterfeit credit cards belonged to a real person. See United States v. Dean, 517 F.3d 1224, 1231 (11th Cir. 2008). The district court did not plainly err in instructing the jury.

## IV. CONCLUSION

Novas's convictions for aggravated identity theft are **AFFIRMED**.