[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-12213
Non-Argument Calendar
_____

D.C. Docket No. 0:15-cr-60137-DTKH-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROHAN HOPE,
a.k.a. D.L.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 19, 2017)

Before JORDAN, ROSENBAUM and FAY, Circuit Judges.

PER CURIAM:

Rohan Hope appeals his conviction for aggravated identity theft and his 60-month-imprisonment sentence following his guilty plea to falsely claiming United States citizenship.  We affirm in part, vacate and remand in part.

## I. BACKGROUND

Hope, a Jamaican citizen, visited a Florida Department of Highway Safety and Motor Vehicles ("DMV") branch in Broward County to obtain a Florida driver's license on November 10, 2014.  Hope provided a birth certificate of D.L., a real person, to a DMV examiner.  Based on that birth certificate, his country of birth was listed as the United States ("U.S.").  The birth certificate was scanned into the database by the examiner and appeared to be an original based on the watermarks and seal on the document.  Although the state of birth listed on the birth certificate was Illinois, the examiner made a mistake and entered Florida as Hope's state of birth.  The DMV examiner also scanned the social security card Hope provided, which was in D.L.'s name and had D.L.'s social security number, into the database.  Hope's citizenship status was listed as a U.S. citizen, based on those documents.  Hope affirmed the information he provided was true under penalty of perjury.

After submitting D.L.'s documentation and passing the road signs and road rules tests, Hope received a learner's permit.  Two days later, on November 12,

2

2014, Hope returned to the DMV branch to take the driving test and received a driver's license using D.L.'s identification.  Hope again swore to the veracity of the driver's license application under penalty of perjury

On June 19, 2015, Hope was indicted for one count of False Claim of U.S. Citizenship, in violation of 18 U.S.C. § 1015(e) ("Count One"), and one count of Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1) ("Count Two"). On September 24, 2015, U.S. Marshals executed a search warrant at Hope's residence in Philadelphia, where they found his wallet containing a Florida driver's license with his picture and D.L.'s name.  Inside the wallet, U.S. Marshal Chad Grant also found an improperly formatted Pennsylvania identification card and a Jamaican driver's license with Hope's picture and a fraudulent name.

Hope pled guilty to Count One[1] but contested Count Two in a nonjury trial. At the bench trial, the government introduced the parties' trial stipulations and read the stipulations into evidence:

---

[1] Hope and the government agreed upon the following factual bases for Count One: (1) Hope, a Jamaican citizen, applied for a Florida driver's license on November 10, 2014, at the DMV in Broward County, Florida; (2) Hope was an alien at that time; (3) to obtain the driver's license, Hope submitted an application claiming to be D.L., a U.S. citizen, and provided proof of D.L.'s identity with an Illinois birth certificate bearing D.L.'s name and date of birth, and a social security card bearing D.L.'s name and social security number; (4) Hope was photographed by Broward County DMV staff on November 10 and 12, 2014; (5) on November 10 and 12, 2014, Hope signed, under penalty of perjury, the information he provided was correct; and (6) Hope was issued a learner's permit in D.L.'s name on November 10, 2014, and a driver's license in D.L.'s name on November 12, 2014.

1. The individual identified in the indictment as DL is a real person. DL's date of birth is December 17, 1977.  DL's Social Security number ends in 9407.

2. Between April 16, 2001 and November 6, 2014, DL was issued ten Illinois state identification cards.

3. Government's Exhibits 1 through 4 are certified Florida [DMV] records and admissible.

4. Government's Exhibit 5, a Florida driver license in the name of DL was in [Hope's] possession on September 24, 2015.

5. [Hope] is a citizen of Jamaica.  Prior to November 10, 2014, [Hope] applied for a United States nonimmigrant visa on five occasions.

Trial Tr. at 48 (Jan. 11, 2016).  The government called DMV records custodian and prior driver's license examiner Mario Rallo, who testified as to Hope's driver's license application under D.L.'s name and to the DMV general driver's license application and verification procedures.  The government introduced the driver's license record from the DMV database under D.L.'s name, which contained an Illinois birth certificate in D.L.'s name, a social security card in D.L.'s name, an address certification in D.L.'s name, a photograph, a statement that "under penalty of perjury, I swear or affirm that the information given by me in this application is true and correct," and the applicant's signature under the statement.  *Id.* at 57.  The government introduced D.L.'s driver's license transaction page from the DMV on November 12, 2014, which contained a signed and dated photograph of Hope.

4

U.S. Marshal Grant also testified regarding the search of Hope's residence on September 24, 2015.

The district judge found, beyond a reasonable doubt, Hope knew at the time he used D.L.'s identifying information those means of identification belonged to a real person. The judge explained:

> Hope in seeking to go forward with his application for a Florida driver's license swore under penalty of perjury that the representations that he was making to the examiner were true and correct. . . .
> . . . Clearly [Hope] in an effort to meet these requirements came in with documentation that had all of the indication of legitimacy, of a real human being, and he was successful the very first time, that is that as a result of his first visit to the [DMV], he ended up with a learner's permit, and then came back two days later, apparently took the driving test, and again, reaffirming and remaking the same representations, he ended up with a Florida driver's license.

*Id.* at 146. The judge considered the means of identification Hope used had been government-issued documents; he had signed documents subjecting himself to perjury; and, after he had been successful in using the means of identification to secure a learner's permit, he returned two days later to retest with those means to obtain a driver's license. The judge found Hope guilty of Count Two.

Prior to sentencing, a probation officer prepared a presentence investigation report ("PSI"). In addition to the facts established at trial, the PSI stated Hope is affiliated with the Jamaican gang known as One Order; he had been arrested in Jamaica for 2010 gang-related shootings; and, during a search of Hope's residence in Pennsylvania, police had discovered 352 grams of marijuana, several weapons,

5

cell phones, and the Jamaica driver's license with a fraudulent name and Hope's photograph. With no enhancements or reductions, and with zero criminal-history points, the PSI set the combined-adjusted-offense level at eight and assigned Hope a criminal history category of I. The maximum-statutory sentence was five years of imprisonment for Count One and two years of imprisonment for Count Two, which must run consecutively to any other counts.[2]

Hope objected to the PSI and asserted he is "not gang affiliated." Def.'s Objs. to PSI at 1. While his brother was gang-involved and killed by police, Hope argued he should not be so labeled based on his brother's activities. The government responded and attached documents it argued established Hope was affiliated with One Order. It submitted a university-published profile of One Order ("One Order profile") stating Hope, also known as "Blacka," became the leader of the gang involved in extortion and money-laundering activity. Gov't Resp. to Def.'s Objs. Attach. A at 2. The profile also cited several Jamaican news articles documenting violent acts by One Order. The government submitted the sworn affidavit of Samuel Blake, Deputy Superintendent of Police for Jamaica and head of the Constabulary Force's National Strategic Anti-Gang Unit, in which he attested Hope's brother, Andrew Hope, led One Order from 2004 until his death in 2006. Deputy Blake attested to activities of Andrew Hope based on "interviews of

---

[2] 18 U.S.C. §§ 1015(e), 1028A(a)(1).

numerous gang members and wannabes," "reports and strategic assessments," "research conducted into the operation of the One Order gang," and "briefings provided to [him] from various sources." Gov't Resp. to Def.'s Objs. Attach. B at 2. The government then filed a motion for upward variance and contended the goals of deterrence and protection of the American and Jamaican public supported a 54-month upward variance from the 0-6 months of the Sentencing Guidelines imprisonment range.

At the sentencing hearing, Hope again objected to the PSI finding he was gang affiliated. To prove Hope was affiliated with One Order, the government called Homeland Security Investigations Special Agent Songura Cole, who was qualified as an expert in Jamaican organized crime and One Order. He testified One Order engaged in weapons smuggling, narcotics smuggling, murder for hire, weapon exchanges for drugs, and extortion. Agent Cole interviewed multiple One Order gang members, two of whom specifically told him "Placka" was the leader of the gang; Placka was the nickname for Hope. Sentencing Hr'g Tr. at 21 (Apr. 14, 2016). The government introduced Deputy Blake's affidavit, the One Order profile pictures of graffiti in a Jamaican town allegedly controlled by One Order, a picture of a mural of One Order's prior gang leaders welcoming Placka as the new leader, newspaper articles reporting Hope's arrest and referring to Hope as the

purported leader of One Order,[3] and a recording and a transcription of the "One Order Anthem" song. *Id.* at 50-51. After the government introduced Deputy Blake's affidavit and read portions of it into evidence, Agent Cole testified those portions, "to the best of [his] knowledge," were true. *Id.* at 31.

Hope made hearsay or relevance objections to the government's exhibits. The district judge sustained Hope's objection to the reliability of the One Order profile and overruled Hope's objections to the remaining hearsay, because, although each individually was unreliable, they "buttress[ed] each other and corroborate[d] the reliable hearsay" presented in Blake's sworn affidavit. Sentencing Hr'g Tr. at 43 (Apr. 14, 2016). He overruled Hope's objection to Deputy Blake's affidavit and stated:

> I am satisfied that the affidavit is in fact reliable hearsay. It is one of those categories that the Court[s] have looked at and I understand there may be a problem in terms of the adequacy and specificity and correctness of what it states and so on.
> I am going to rely on that and not consider the other information.

Sentencing Hr'g Tr. at 8 (Apr. 27, 2016).

The district judge concluded Agent Cole's credible testimony, Deputy Blake's reliable affidavit, and the undisputed facts in the PSI sufficiently proved by a preponderance of the evidence Hope was the leader of One Order, a very serious

---

[3] The articles refer to Hope as "Placka" and "Blacka." Sentencing Hr'g Tr. at 45, 46, 48 (Apr. 14, 2016).

criminal gang. The judge found Hope took over as the leader after his brother was murdered, and the gang was notorious for the very serious crimes listed in Deputy Blake's affidavit. Additionally, the judge found the guns, drugs, and multiple cellphones discovered in Hope's Philadelphia residence belonged to him and evidenced ongoing criminal-drug trafficking. These facts showed Hope's purpose in obtaining false identification was criminal and much more dangerous than typical aggravated identity-theft cases. Given these facts and weighing heavily Hope's history and characteristics under 18 U.S.C. § 3553(a), the judge granted the government's motion for an upward variance. The judge sentenced Hope to 36 months of imprisonment on Count One and 24 months of imprisonment on Count Two, to run consecutively.

On appeal, Hope argues the evidence was insufficient to support the conclusion Hope knew D.L.'s identifying information belonged to a real person, where there was no evidence he tested the identifying information prior to submitting his driver's license application to the DMV. Hope also argues the judge clearly erred in finding Hope was the leader of the One Order gang and in basing the upward variance and sentence on that erroneous finding. Finally, Hope contends his 60-month-imprisonment sentence was substantively unreasonable.

## II. DISCUSSION

### A. Sufficiency of the Evidence

"We review *de novo* whether there is sufficient evidence in the record to support a [factfinder's] verdict in a criminal trial, viewing the evidence in the light most favorable to the government, and drawing all reasonable factual inferences in favor of the [factfinder's] verdict." *United States v. Jiminez*, 564 F.3d 1280, 1284 (11th Cir. 2009). "We will not reverse unless no reasonable trier of fact could find guilt beyond a reasonable doubt." *United States v. Farley*, 607 F.3d 1294, 1333 (11th Cir. 2010). We will sustain a verdict "where there is a reasonable basis in the record for it." *Id.* (citation and internal quotation marks omitted). This is true even when the district judge, instead of a jury, acts as the trier of fact. *Id.*

"Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years." 18 U.S.C. § 1028A(a)(1). To support a conviction under § 1028A(a)(1), the government must prove "the defendant: (1) knowingly transferred, possessed, or used; (2) the means of identification of another person; (3) without lawful authority; (4) during and in relation to a felony enumerated in § 1028A(c)." *United States v. Barrington*, 648 F.3d 1178, 1192 (11th Cir. 2011) (citation and internal

quotation marks omitted).  The enumerated felonies in § 1028A(c) include felony violations of 18U.S.C. § 911 "relating to false personation of citizenship."  18 U.S.C. § 1028A(c)(2).

The "means of identification" element refers to "a name, social security number, date of birth, or driver's license number, among other things."  *United States v. Doe*, 661 F.3d 550, 561 (11th Cir. 2011) (citation and internal quotation marks omitted).  The government must prove the defendant *knew* the means of identification belonged to a real person.  *Flores-Figueroa v. United States*, 556 U.S. 646, 647, 129 S. Ct. 1886, 1888 (2009).  "[T]he government can rely on circumstantial evidence about an offender's misuse of a victim's identity to prove the offender knew the identity belonged to a real person."  *United States v. Gomez-Castro*, 605 F.3d 1245, 1249 (11th Cir. 2010).

"[A] defendant's repeated and successful testing of the authenticity of a victim's identifying information prior to the crime at issue is powerful circumstantial evidence that the defendant knew the identifying information belonged to a real person as opposed to a fictitious one."  *Doe*, 661 F.3d at 562-63 (citing *Gomez-Castro*, 605 F.3d 1245; *United States v. Holmes*, 595 F.3d 1255 (11th Cir. 2010)).  The government does not need to present evidence regarding a government agency's rigorous verification process.  *Gomez-Castro*, 605 F.3d at 1249.  A reasonable jury can infer, based on ordinary human experience and

11

common sense, a defendant "knew at least that the federal and state governments routinely obtain an applicant's identity to verify the authenticity of that identity." *Id.*

In *Holmes*, we concluded facts and circumstances could have led a reasonable jury to find the defendant knew the means of identification belonged to a real person. *Holmes*, 595 F.3d at 1258 (concluding the combinations of facts were "probative" of knowledge). There was sufficient circumstantial evidence from which a reasonable jury could infer (1) the defendant knew the social security card she misused belonged to a real person, (2) the defendant knew the birth certificate and corresponding social security card she misused belonged to a real person after she successfully used the birth certificate to obtain a passport, (3) the defendant "knew, all along, that the social security card belonged to a real person and was not a forgery," and (4) the defendant "would not have sought credit using [the victim's] personal information if [she was] not confident that [the victim] likely had an actual credit history." *Id.* Similarly, in *Doe*, the defendant repeatedly and successfully tested the identifying information, and a reasonable jury could infer the identifying information would be subject to a detailed verification process. We also strongly considered other "meaningful circumstantial indicia," including the defendant's conduct during the application process, the defendant's application was signed under oath, and the defendant's continuing with the

12

application process after being subjected to increased scrutiny. *Doe*, 661 F.3d at 563-65.

The evidence showed Hope submitted D.L.'s social security card and birth certificate to the Broward County DMV branch to obtain a learner's permit, he signed the learner's permit application with D.L.'s identifying information under penalty of perjury, he returned to the same DMV two days later and signed another document with D.L.'s identifying information under penalty of perjury to obtain a driver's license, and the DMV subjects applicants' means of identification to a rigorous, multi-step verification process. Even without evidence of any "repeated and successful" testing by Hope, the facts and circumstances in this case were sufficient for a jury to infer knowledge. Hope submitted D.L.'s identifying information to the DMV two times within two days to obtain two government-issued documents, and the jury reasonably could have inferred Hope knew state governments often request and retain detailed personal information to verify its authenticity. *Doe*, 661 F.3d at 563-65; *Gomez-Castro*, 605 F.3d at 1249; *Holmes*, 595 F.3d at 1258. Viewing the evidence in the light most favorable to the government and drawing all reasonable factual inferences in favor of the factfinder's verdict, the record supports a reasonable factfinder's conclusion Hope was guilty of aggravated identity theft beyond a reasonable doubt. *Farley*, 607 F.3d at 1333; *Jiminez*, 564 F.3d at 1284. We affirm Hope's conviction.

13

## B. Upward Variance

We review the sentencing judge's factual findings for clear error. *United States v. Glinton*, 154 F.3d 1245, 1258-59 (11th Cir. 1998). A sentencing judge may consider hearsay testimony but due process requires the defendant be given an opportunity to refute the evidence, and the evidence bears minimal indicia of reliability. *United States v. Giltner*, 889 F.2d 1004, 1007 (11th Cir. 1989). The evidence has sufficient indicia of reliability, when the indicia support the probable accuracy of the matter asserted. *United States v. Ghertler*, 605 F.3d 1256, 1269 (11th Cir. 2010). Indicia of reliability include an oath, the defendant's opportunity to cross-examine, the factfinder's opportunity to observe the declarant's demeanor, and other evidence corroborating or contradicting the statement. *United States v. Reme*, 738 F.2d 1156, 1168 (11th Cir. 1984) (holding the district judge erroneously imposed a sentence based on hearsay statements within a witness's testimony, where the hearsay statements demonstrated none of these indicia and the statements were contradicted by testimony bearing various indicia of reliability). Due process also requires the sentencing judge to make distinct findings regarding the reliability of the hearsay evidence presented at sentencing, unless the reliability is apparent from the record. *United States v. Gordon*, 231 F.3d 750, 761 (11th Cir. 2000). If the sentencing judge fails to state reliability findings, and the record does not clearly show the reliability of the statement, we must vacate and remand the

14

sentence for the judge to make reliability findings. *United States v. Lee*, 68 F.3d 1267, 1276 (11th Cir. 1995).

The district judge erred in basing his finding Hope was the leader of One Order on hearsay statements, where the judge failed to make particularized reliability findings, and the record does not clearly demonstrate their reliability. The only evidence of Hope's gang affiliation considered by the judge was (1) statements in Deputy Samuel Blake's affidavit and (2) Agent Cole's testimony two One Order gang members told him, while not under oath, Hope was the leader. The judge explicitly relied upon this hearsay evidence in sentencing Hope and concluded Hope's crimes were more serious, given his gang affiliation in Jamaica and his continued gang-related-criminal activity in the United States.

Although Hope had an opportunity to rebut the evidence, the judge made only a blanket assertion Deputy Blake's affidavit was reliable and failed to make explicit findings of fact explaining why he found either the affidavit or the hearsay statements in Agent Cole's testimony to be reliable. *Gordon*, 231 F.3d at 761; *Giltner*, 889 F.2d at 1007. Although distinct findings are not always required, because the reliability of neither Deputy Blake's affidavit nor the hearsay statements in Agent Cole's testimony is apparent from the record, they were required in this case. *Gordon*, 231 F.3d at 761; *Lee*, 68 F.3d at 1276.

The  judge relied on Deputy Blake's affidavit even after specifically stating it had adequacy, specificity, and correctness problems, and after stating he was not considering the affidavit's supporting exhibits, because they were based on either unknown sources of knowledge or repetitious information from police sources. Deputy Blake's statements under oath are insufficient, because most of Deputy Blake's findings as to Hope's leadership of One Order were directly dependent on or linked to the evidence the judge explicitly did not consider because of reliability deficiencies. *Reme*, 738 F.2d at 1168.  Nor was Agent Cole's testimony Hope was the gang's leader sufficiently reliable, where his knowledge of that allegation was based on the hearsay statements of the two One Order members and there are no indicia of reliability supporting these hearsay statements. *Giltner*, 889 F.2d at 1007.  The two One Order members' statements were not given under oath, Hope did not have an opportunity to cross-examine the members, the judge as factfinder was not able to observe the gang members' demeanor while they asserted Hope's leadership, and there is no other record evidence corroborating the veracity of these statements. *Gordon*, 231 F.3d at 760-61; *Reme*, 738 F.2d at 1168.

Deputy Blake's affidavit and the One Order members' hearsay statements as testified to by Agent Cole lack minimal indicia of reliability to have been considered by the district judge. *Giltner*, 889 F.2d at 1007.  Because the judge failed to make explicit reliability findings, and the record does not clearly establish

16

the reliability of the statements, we vacate Hope's sentence and remand for further reliability findings.[4]  *Lee*, 68 F.3d at 1276.

## AFFIRMED IN PART; VACATED AND REMANDED IN PART.

---

[4] Because the resolution of the hearsay issue on remand may impact the variance, we do not address the substance of Hope's substantive reasonableness claim.  *See United States v. Estrada*, 777 F.3d 1318, 1323 (11th Cir. 2015) (holding on resentencing, after vacating the defendant's sentence and remanding because of an incorrectly calculated Guidelines range, "the district court shall consider all appropriate 18 U.S.C. § 3553(a) factors in determining a reasonable sentence").

17