**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-12989

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

CARLOS TEJEDA,
JUAN TEJEDA,
PEDRO SERGIO PELAEZ GUTIERREZ,
a.k.a. Pedro Pelaez,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida

2                    Opinion of the Court                    23-12989

D.C. Docket No. 2:22-cr-00036-SPC-NPM-1

_____

Before NEWSOM and LUCK, Circuit Judges and LEIBOWITZ,* District Judge

PER CURIAM:

Pedro Sergio Pelaez Gutierrez ("Pelaez"), Carlos Tejeda ("Carlos"), and Juan Tejeda ("Juan")[1] were tried, convicted, and sentenced for conspiracy to commit wire fraud, wire fraud, aggravated identity theft, and related offenses. Each defendant raises separate issues on appeal: Pelaez challenges the sufficiency of the evidence for his convictions; Carlos appeals his sentence as substantively unreasonable; and Juan appeals the application of a three-level enhancement to his offense level under U.S.S.G. § 3B1.1(b) for acting as a manager or supervisor in criminal activity involving five or more participants based on his role in the fraud scheme. We reject each argument, and, accordingly, **AFFIRM** each conviction and sentence.

---

* Honorable David S. Leibowitz, United States District Judge for the Southern District of Florida, sitting by designation.

[1] Carlos and Juan have the same last name, so we refer to them by their first names.

## I

### A

Carlos—the mastermind behind the operation—hatched a scheme whereby he and his friends ("the participants") would (1) register fake businesses with the Florida Department of State Division of Corporations, (2) open bank accounts and buy credit card machines in the names of those businesses, (3) steal credit card information and attach it to their own homemade cards, (4) swipe those fake cards at the credit card terminals, and (5) deposit the proceeds of those transactions into the bank accounts. Carlos would bring the counterfeit credit cards to the participants and swipe them on the credit card terminals, usually for a 40 percent kickback.

Juan—the IT whiz and Carlos's son—would construct the counterfeit cards and encode them with the stolen credit card information. On occasion, he would visit the participants and swipe the counterfeit cards on the credit card machines, just like Carlos. Various participants testified that Carlos and Juan were the go-to guys handling the day-to-day fraud. When agents searched Juan's apartment, they found plastic cards with a black magnetic stripe on the back, an encoder with which to write data onto magnetic stripes, and counterfeit credit cards.

Pelaez was a participant in the fraud scheme. He registered the business Pelaez Trucking Repair and recruited his wife, Estevez, and his son, Leader, both of whom in turn incorporated their own businesses. All of these participants would give Carlos 40 percent

of the transaction proceeds.  While executing a search warrant on Pelaez Trucking Repair's named address, an agent observed Pelaez holding a briefcase, which contained two point-of-sale terminals and receipts.  One receipt showed a card transaction in the amount of $1,285.14, but had neither a customer signature nor a card-holder's name.  Upon searching Pelaez, the agent found eight credit or debit cards—issued personally to Pelaez or Pelaez Trucking Re-pair—for four separate banks.  Various other similar receipts were also seized from Pelaez's home.

## B

A federal grand jury charged Pelaez, Carlos, and Juan with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349 (Count 1); wire fraud, in violation of 18 U.S.C. §§ 1343 and 2 (Counts 2–30)[2]; aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1) and 2 (Counts 31–41)[3]; and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count 42). Carlos and Juan were additionally charged with production of counterfeit access devices, in violation of 18 U.S.C. §§ 1029(a)(1), (c)(1), and 2 (Count 43) and possession of device-making equip-ment, in violation of 18 U.S.C. §§ 1029(a)(4), (c)(2), and 2 (Count 44).  The case then proceeded to trial.

At the close of the government's evidence, Pelaez moved for a judgment of acquittal and argued that the evidence was

---

[2] Pelaez was charged only in counts 8, 9, 13, 14, 17, and 18.

[3] Pelaez was charged only in counts 33, 35, 36, and 42.

insufficient to sustain a conviction.  The court denied the motion, determining that—viewing the evidence in the light most favorable to the government—there was sufficient evidence for a reasonable jury to conclude that Pelaez was guilty of each and every element of the criminal charges against him beyond a reasonable doubt. The jury convicted him on Counts 1, 8, 9, 13, 14, 17, 18, 33, 35, 36, and 42.  Pelaez did not object to his PSR, and was sentenced to 72 months' imprisonment and three years of supervised release.

The jury convicted Carlos and Juan on Counts 1–44.  At sentencing, their PSRs reported that Carlos and Juan orchestrated large-scale credit and debit card fraud by recruiting and directing their friends to create fictitious companies, open bank accounts for those shell companies, apply for integrated merchant processing services for the companies, and obtain credit card point-of-sale terminals.  The PSRs further reported that during the course of the defendants' criminal conduct, hundreds of victims were defrauded.

The probation officer calculated their base offense level at 29 for Counts 1–30 and 42–44, consistent with U.S.S.G. §§ 2S1.1(a)(1) and 2B1.1(a)(1).  Among other enhancements to the base level, and pursuant to § 3B1.1(a), the officer added four levels to the base level because Carlos and Juan were the organizers or leaders of criminal activity that involved five or more participants or was otherwise extensive.  The result was a total offense level of 35 and a criminal history category of I; the PSRs calculated a guideline range of 168 to 210 months' imprisonment for Counts 1-30 and 42-44, and a

consecutive term of the minimum term of imprisonment required by statute per count.

Juan objected to the four-level managerial enhancement, arguing that he was not an organizer but was simply recruited by his father. The government partially agreed, arguing that a three-level enhancement for being a "manager or supervisor" was more appropriate. The sentencing court agreed with the government, applying a three-level enhancement and sentencing Juan to 180 months' imprisonment and three years of supervised release.

Carlos filed a sentencing memorandum requesting that the court apply a downward variance based on his lack of criminal history, his age, and the limited victim impact. The court declined the downward variance, but imposed an imprisonment term at the bottom of his guideline range. He was sentenced to 192 total months' imprisonment and three years of supervised release.

## II

First, Carlos. We review the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard considering the totality of the circumstances. *Gall v. United States*, 552 U.S. 38, 51 (2007). In reviewing the reasonableness of a sentence, we will not substitute our own judgment for that of the district court and will "affirm a sentence so long as the court's decision was in the ballpark of permissible outcomes." *United States v. Butler*, 39 F.4th 1349, 1355 (11th Cir. 2022) (quotation marks omitted). Further, "ordinarily we would expect a sentence within the Guidelines range to be reasonable." *United States v. Sarras*, 575 F.3d 1191, 1219

(11th Cir. 2009) (citation modified).  The "party challenging the sentence bears the burden of showing it is unreasonable." *United States v. Boone*, 97 F.4th 1331, 1338–39 (11th Cir. 2024).

Although the district court is required to consider all relevant § 3553(a) factors, "the weight given to each factor is committed to the sound discretion of the district court," and the court may attach great weight to one factor over the others. *Butler*, 39 F.4th at 1355.  The court need not explicitly state on the record that it has considered all the factors or expressly discuss each of them. *United States v. Robles*, 408 F.3d 1324, 1328 (11th Cir. 2005).  Moreover, the court's failure to discuss mitigating evidence does not indicate that the court "erroneously 'ignored' or failed to consider this evidence." *United States v. Amedeo*, 487 F.3d 823, 833 (11th Cir. 2007).

Carlos's guidelines range, which he does not contest, was 168 to 210 months on counts 1–30 and 42–44, and 24 months consecutive for counts 31–41.  After properly considering the 18 U.S.C. § 3553(a) factors, the court sentenced Carlos to 168 months' imprisonment for counts 1–30, 42, and 44, a concurrent term of 120 months for count 43, and a consecutive term of 24 months' imprisonment for counts 31–41, followed by three years of supervised release.  The judge specified that this bottom-of-the-guidelines range accounts for the both the seriousness of the offense but also the defendant's "age and lack of prior criminal history."

Because the 192-month sentence imposed on Carlos is reasonable given his offense, within the guidelines range, and reflects consideration of the § 3553(a) factors, it is substantively reasonable.

### III

Next, Juan.  As a reminder, he challenges the application of a three-level sentencing enhancement under U.S.S.G. § 3B1.1(b) for being a manager or supervisor.  With respect to the district court's findings with respect to Guidelines issues, we review legal issues de novo, factual findings for clear error, and the court's application of the Guidelines to the facts with "due deference," which is akin to clear-error review.  *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010).  We review the district court's imposition of an aggravating role enhancement for clear error.  *United States v. Shabazz*, 887 F.3d 1204, 1222 (11th Cir. 2018).  Under this deferential standard, "we will not disturb a district court's findings unless we are left with a definite and firm conviction that a mistake has been committed."  *United States v. Clarke*, 562 F.3d 1158, 1165 (11th Cir. 2009) (citation modified).

Under § 3B1.1(b), the three-level increase for a managerial or supervisory role applies if (1) the defendant was a manager or supervisor but not an organizer or leader; and (2) the criminal activity involved five or more participants or was otherwise extensive. U.S.S.G. § 3B1.1(b).  Juan does not contest that the scheme involved five or more participants.  To qualify for the three-level increase, then, the government was required to prove only that he managed or supervised one other participant involved in the criminal offense. *United States v. Sosa*, 777 F.3d 1279, 1301 (11th Cir. 2015).

A sentencing court assesses seven factors to distinguish between leaders or organizers and managers or supervisors:  (1) the

exercise of decision-making authority, (2) the nature of participation in the commission of the offense, (3) the recruitment of accomplices, (4) the claimed right to a larger share of the fruits of the crime, (5) the degree of participation in planning or organizing the offense, (6) the nature and scope of the illegal activity, and (7) the degree of control and authority exercised over others. U.S.S.G. § 3B1.1 cmt.4. But "[t]here is no requirement that all the considerations have to be present in any one case." *United States v. Ramirez*, 426 F.3d 1344, 1356 (11th Cir. 2005). Instead, "these factors are merely considerations for the sentencing judge, who makes the factual determinations for the applicability of the § 3B1.1 enhancement on a case-by-case basis." *Id*.

Juan exercised control over two participants—Maida Flores and Walter Flores. The Floreses testified that they "dealt directly with Juan," such as by paying him kickbacks from the proceeds of the frauds. Also, he would come to their house—in place of his father—to swipe counterfeit credit cards on their machines. He argues that his role was more akin to the "IT guy" rather than the President or CEO of the operation, but that implicates the second guidelines factor—the nature of his participation in the offense. His commitment to the technological aspect of the operation as the "IT guy" shows he was acting as a manager with an established role in the crime, because he—in essence—ran the IT Department.

Here, the district court did not err in applying the three-level enhancement under U.S.S.G. § 3B1.1(b) because Juan dealt directly with his co-conspirators, swiped fraudulent credit cards on his

co-conspirators' payment terminals, and received cash kickbacks from the fraudulent transactions.

## IV

Lastly, we consider Pelaez's challenge to the sufficiency of the evidence for his convictions for conspiracy to commit wire fraud, wire fraud, and aggravated identity theft.  Ordinarily, "we . . . review de novo challenges to the sufficiency of the evidence.  *United States v. Zitron*, 810 F.3d 1253, 1260 (11th Cir. 2016).  But here, Pelaez made only a general objection to the sufficiency of the evidence below, and only specified his objections for the first time on appeal.  We have never held that making a general objection to the sufficiency of the evidence preserves more specific arguments on appeal, and we needn't do so today.  *See United States v. Tovar*, 146 F.4th 1318, 1325 n.3 (11th Cir. 2025).  Under either plain error or de novo review, Pelaez has failed to show that the district court erred.

We will uphold the district court's denial of a motion for judgment of acquittal "if a reasonable trier of fact could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt."  *United States v. Holmes*, 814 F.3d 1246, 1250 (11th Cir. 2016) (citation modified).  We view the evidence and draw all reasonable inferences and credibility choices in the light most favorable to the government.  *United States v. Gamory*, 635 F.3d 480, 497 (11th Cir. 2011).  The evidence need not "exclude every reasonable hypothesis of innocence" in order for a reasonable jury to find guilt beyond a reasonable doubt, and the jury is free to choose among

alternative, reasonable interpretations of the evidence. *United States v. Cruz-Valdez*, 773 F.2d 1541, 1545 (11th Cir. 1985) (en banc).

To establish conspiracy to commit wire fraud under 18 U.S.C. § 1349, "the government must prove beyond a reasonable doubt (1) that a conspiracy [to commit wire fraud] existed; (2) that the defendant knew of it; and (3) that the defendant, with knowledge, voluntarily joined it." *United States v. Vernon*, 723 F.3d 1234, 1273 (11th Cir. 2013) (quotation marks omitted). "Because the crime of conspiracy is predominantly mental in composition, it is frequently necessary to resort to circumstantial evidence to prove its elements." *United States v. Watkins*, 42 F.4th 1278, 1285 (11th Cir. 2022) (citation modified). The "government need not prove that the defendant knew all of the details or participated in every aspect of the conspiracy." *Id*. (citation modified). "Rather, the government must only prove that the defendants knew the essential nature of the conspiracy." *United States v. Garcia*, 405 F.3d 1260, 1270 (11th Cir. 2005) (citation modified).

The record evidence shows that Pelaez registered his own shell business, opened bank accounts in that company's name, and conducted fraudulent credit card transactions with stolen credit card information. When he was searched pursuant to a warrant, the contents of his briefcase contained a credit card terminal and receipts for fraudulent transactions. Additionally, Pelaez roped his son and wife into the plan and was present when Carlos explained the scheme to them. This is more than enough evidence to

establish that the government introduced sufficient evidence for a jury to convict Pelaez for conspiracy beyond a reasonable doubt.

To establish wire fraud, a person must "(1) intentionally participate in a scheme or artifice to defraud another of money or property and (2) use or cause the use of the mails or wires for the purpose of executing the scheme or artifice." *Watkins*, 42 F.4th at 1282 (citation modified). A "defendant intends to defraud when he 'attempt[s] to obtain, by deceptive means, something to which he was not entitled.'" *Id.* (quoting *United States v. Bradley*, 644 F.3d 1213, 1240 (11th Cir. 2011)). "A jury may infer an intent to defraud from the defendant's conduct." *Bradley*, 644 U.S. at 1239 (citation modified).

Just as above, Pelaez registered his company with the purpose of joining Carlos's scheme to conduct fraudulent credit card transactions through the use of credit card terminals and by swiping fraudulent credit cards. Moreso, he involved his son and his wife so they could also profit from this scheme. This clearly shows his intent to participate in the scheme. Further, police found point-of-sale terminals at Pelaez's home as well as receipts from the fraudulent transactions. Pelaez argues that it was Carlos who masterminded the operation and that Carlos was usually the person actually swiping the cards through the credit card terminals, but we have held that "a defendant may be convicted of wire fraud without personally committing each and every element of wire fraud, so long as [he] knowingly and willfully joined the criminal scheme, and a co-schemer used the wires for the purpose of executing the

scheme." *Watkins*, 42 F.4th at 1284 (citation modified).  The jury had plenty of evidence to convict Pelaez of wire fraud.

To establish aggravated identity theft under 18 U.S.C. § 1028A(a)(1), the government must prove "that the defendant: (1) knowingly transferred, possessed, or used; (2) the means of identification of another person; (3) without lawful authority; (4) during and in relation to a felony enumerated in § 1028A(c)." *United States v. Barrington*, 648 F.3d 1178, 1192 (11th Cir. 2011) (citation modified).  Wire fraud is an enumerated felony in § 1028A(c).  18 U.S.C. § 1028A(c)(5).  Pelaez concedes, or does not dispute on appeal, that the credit card information was used without authorization.  He contests only prongs 1 and 4—*i.e.*, (1) that the government did not produce any direct evidence that Pelaez *knew* that the credit card information belonged to real people and (4) that he did not commit a felony because he did not commit wire fraud.  Because we held above that the jury had a sufficient amount of evidence to convict Pelaez for wire fraud, *supra* at 13–14, we need only consider his mens rea.

Leader—Pelaez's son—testified that he quickly learned that the cards contained stolen information.  Because Pelaez brought Leader into the scheme and was present when Carlos explained it to Leader, it was reasonable for the jury to assume that Pelaez also knew the source of the credit card information.  Also, Pelaez stole hundreds of thousands of dollars over the course of more than 350 transactions; some transactions were conducted twice in the same day using the same credit card information.  A natural inference is

that Pelaez ran the credit card information, and once he knew that the transaction was successful, ran it again. Because knowledge can be inferred based on circumstantial evidence, *see United States v. Gomez-Castro*, 605 F.3d 1245, 1249 (11th Cir. 2010), a jury could impute knowledge based on the above-described evidence.

The district court did not err in denying Pelaez's motions for judgment of acquittal because a reasonable trier of fact could find Pelaez guilty of conspiracy to commit wire fraud, guilty of wire fraud, and guilty of aggravated identity theft. We affirm his conviction.

## V

In sum, we reject each of the defendants' challenges and **AFFIRM** their convictions and sentences.[4]

---

[4] This appeal was originally scheduled for oral argument, but the panel unanimously agreed to remove it from the oral argument calendar under 11th Circuit Rule 34-3(f).